**Certiorari Denied, August 1, 2011, No. 33,106**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:     2011-NMCA-088**

**Filing Date: June 6, 2011**

**Docket No. 28,754**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

**v.**

**JOSE M. GUTIERREZ,**

    **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen D. Pfeffer, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

## OPINION

**KENNEDY, Judge.**

**{1}** Defendant Jose Gutierrez's involvement in an April 2005 altercation resulted in two separate grand juries indicting him on a total of ten counts of criminal behavior. The two indictments were joined for trial. The first trial resulted in a conviction on one count, acquittal on two counts, and a hung jury mistrial on the remaining counts. Defendant

1

appealed the conviction. While that appeal was pending, a second trial was conducted on the mistrial counts. The second jury convicted Defendant on all counts submitted to it.

**{2}** Defendant now appeals from the second verdict and sentence, asserting that the district court (1) was without jurisdiction to try him while his first conviction was on appeal; (2) violated his rights under the Confrontation Clause when it admitted a videotape taken at the scene of the incident; and (3) improperly admitted a 2003 judgment and sentence entered against Defendant for previous crimes, as well as a prior stipulated restraining order against Defendant concerning one of the victims in this case. We affirm.

## I.   DISCUSSION

### A.   The District Court Had Jurisdiction to Conduct the Trial

**{3}** Defendant argues that the district court lacked jurisdiction to conduct the second trial against Defendant while the appeal from his first trial was pending. "We review jurisdictional issues . . . under a de novo standard of review." *State v. Heinsen*, 2005-NMSC-035, ¶ 6, 138 N.M. 441, 121 P.3d 1040; *see State v. Chavarria*, 2009-NMSC-020, ¶ 11, 146 N.M. 251, 208 P.3d 896 ("Questions regarding subject matter jurisdiction are questions of law which are subject to de novo review." (internal quotation marks and citation omitted)).

**{4}** In April 2005, a grand jury indicted Defendant of first-degree murder, conspiracy to commit first-degree murder, two counts of aggravated battery with a deadly weapon, two counts of aggravated assault with a deadly weapon, and aggravated stalking. In February 2006, another grand jury indicted Defendant of additional charges that included aggravated burglary, aggravated battery against a household member, and violation of an order of protection. In May 2006, Defendant was simultaneously tried for all charges.

**{5}** At his first trial, the jury acquitted Defendant of first-degree murder and battery on a household member and convicted Defendant of violating an order of protection. On the remaining counts, the jury was unable to reach a verdict, and the district court ordered a mistrial on those counts. Defendant then appealed his conviction and sentence for violating the protective order.[1] While the appeal was pending, Defendant was retried and convicted of the counts on which the jury was unable to reach a verdict during the first trial and was sentenced by the district court on the other charges for which he was convicted. Defendant now appeals from that case and contends that the district court lacked jurisdiction to retry him on those offenses while his convictions were on appeal to this Court.

_____

[1]This appeal was dismissed by Defendant about a month following the conclusion of his second trial and is not a part of this appeal.

2

**{6}**     In general, "[a] trial court loses jurisdiction of a case upon the filing of the notice of appeal, except for the purposes of perfecting such appeal, or of passing upon a motion directed to the judgment pending at the time." *State v. Roybal*, 120 N.M. 507, 512, 903 P.2d 249, 254 (Ct. App. 1995) (alteration omitted) (internal quotation marks and citation omitted). Yet, it is established "that a pending appeal does *not* divest the [district] court of jurisdiction to take further action when the action *will not affect the judgment on appeal*." *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 241, 824 P.2d 1033, 1043 (1992). The United States Supreme Court has explained that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over *those aspects of the case involved in the appeal*." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (emphasis added).

**{7}**     In addition, the "right to appeal is restricted to final judgments and decisions. A final order is commonly defined as an order that decides all issues of fact and law necessary to be determined or which completely disposes of the case to the extent the court had the power to dispose of it." *State v. Begay*, 2010-NMCA-089, ¶ 11, 148 N.M. 685, 241 P.3d 1125 (internal quotation marks and citation omitted). The United States Supreme Court has held that a "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212 (1937).

**{8}**     In *State v. Lobato*, we stated that "an order declaring mistrial simply terminates the trial before a verdict is reached and does not finally determine any issues in the case." 2006-NMCA-051, ¶ 34, 139 N.M. 431, 134 P.3d 122. There, we held that an "order declaring mistrial was not a final order [the d]efendant could appeal as a matter of right." *Id.* Thus, any charges resulting in a mistrial or hung jury are not finally determined. In contrast, as in this case, a matter upon which a defendant has been convicted and sentenced and which he has appealed is finally determined and no longer within the district court's jurisdiction. Charges that have not been finally determined properly remain with the district court.

**{9}**     This case presents us with a trial that resulted in part with a conviction and in part with a mistrial. In *People v. Schulz*, the California Court of Appeals dealt with a similar situation. 7 Cal. Rptr. 2d 269 (Ct. App. 1992). In that case, the defendant argued on appeal that he could not be retried for a great bodily injury enhancement, which the jury had hung on, while he appealed his conviction from that same trial for attempted murder. *Id*. at 270. The *Schulz* court "conclude[d that] the [district] court had jurisdiction to retry and sentence the great bodily injury enhancement, since its resolution would have no direct impact on the validity of the guilty verdict and sentence for the attempted murder charge pending on appeal." *Id*. at 273.

**{10}**    We apply a similar rationale to this case. Here, Defendant's first trial, from which he appealed, ended in a conviction for a protective order violation, yet, the jury hung on the other charges. Defendant was sentenced only for the protective order violation. As to that charge, the criminal trial process was complete, and the judgment and sentence filed was a final order as to that charge. Defendant thus had an appealable judgment with respect to that conviction and not with respect to the counts that resulted in a mistrial. As a matter of right, Defendant could and did appeal the conviction on that single count, but his appeal was

3

limited to only the conviction for violating the protective order. The district court retained jurisdiction to retry the unresolved charges.

## B.     The Videotapes Were Properly Admitted

{11}    Defendant contends that the district court improperly admitted videotaped statements in violation of his Sixth Amendment right to confront witnesses. Owing to the poor quality of the videotape, only several statements were audible. After hearing arguments and testimony about this issue, the district court redacted two of the statements on the videotape which were made by police officers because the statements were "improper." The court determined that "[these] other statements [were not] confrontational clause issues," and the jury heard the following taped statements: (1) "[we] are [the] victims"; (2) "this guy had a restraining order"; (3) "[t]he chick who lives in there, he's her baby daddy, he pulled a knife on her first thing"; and (4) "[t]hey fucking stabbed me, bro[.]" The court identified two speakers who could have made these statements as "Landeros or . . . Martinez," both of whom were victims of Defendant's attack.

{12}    We now determine the extent to which the admission of such statements violated the Confrontation Clause. "We apply a de novo standard of review as to the constitutional issues related to [the d]efendant's rights under the Confrontation Clause." *State v. Massengill*, 2003-NMCA-024, ¶ 5, 133 N.M. 263, 62 P.3d 354; *see State v. Soliz*, 2009-NMCA-079, ¶ 7, 146 N.M. 616, 213 P.3d 520 (reviewing de novo the district court's admission of statements recorded in a 911 transcript for Sixth Amendment violations), *cert. quashed*, 2010-NMCERT-008, 148 N.M. 943, 242 P.3d 1289.

{13}    "The Confrontation Clause guarantees the accused in a criminal trial the right to be confronted with the witnesses against him, regardless of how trustworthy the out-of-court statement may appear to be." *State v. Mendez*, 2010-NMSC-044, ¶ 28, 148 N.M. 761, 242 P.3d 328 (internal quotation marks and citation omitted). "[T]he Confrontation Clause prohibits the admission of testimonial statements unless the declarant is unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *State v. Bullcoming*, 2010-NMSC-007, ¶ 11, 147 N.M. 487, 226 P.3d 1 (internal quotation marks and citation omitted), *cert. granted*, *Bullcoming v. N.M.*, 131 S. Ct. 62 (2010). At issue here is whether the statements made on the videotape were testimonial.

{14}    "Statements are *non*[-]*testimonial* when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *State v. Romero*, 2007-NMSC-013, ¶ 7, 141 N.M. 403, 156 P.3d 694 (internal quotation marks and citation omitted). On the other hand, statements "are *testimonial* when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* (internal quotation marks and citation omitted). In *Romero*, our Supreme Court examined the United States Supreme Court's rulings in *Davis v. Washington*, 547 U.S. 813 (2006) and *Crawford v. Washington*, 541 U.S. 36 (2004). The Court explained that "[t]he [United States Supreme] Court distinguished *Crawford*, which considered an interrogation by police officers of a

4

witness hours after the event [the witness] described, from *Davis*, which considered an interrogation by a 911 operator during an ongoing emergency, based on the immediacy of the event." *Romero*, 2007-NMSC-013, ¶ 8. *Crawford*'s interrogation of a witness was testimonial, and *Davis*'s questioning by a 911 operator during an on-going emergency was non-testimonial. *Romero*, 2007-NMSC-013, ¶ 8. The purpose for the questioning in each case is the dispositive distinction: questions asked to resolve an on-going emergency are non-testimonial, and questions used to elicit information about past events involving no present emergency are testimonial. *Id.* Furthermore, the formality of the interrogation is also of importance in determining whether the statements were testimonial as testimonial questions are typically given under the circumstances involving greater formality. *Id.* ¶¶ 8, 21.

{15} The circumstances in this case are of the type associated with non-testimonial statements. The videotape at issue was taken from a police officer's patrol car when the officer was responding to a call about a fight in progress. The officer testified that at the time the video was recorded, the police were "still trying to figure out . . . if [they were] still looking for other suspects, if the guys [on the videotape were] just victims or suspects . . . and if there [were] any other victims that [they were] not aware of." The officer arrived to find four men at the scene, two of whom had been stabbed. He explained that the two injured men "were just blurting out statements and were in a lot of pain[,]" and the uninjured men were not talking.

{16} After listening to the video and the testimony from the officer, the district court determined that at the time the video was taken, the police were "securing the scene, finding out if other suspects or victims [were] out there [because] they need[ed] to act quickly to put a perimeter around the action." The court further stated that if the statements were made in "response to an inquiry, it would be a very general inquiry about what's happening, not some interrogation at this point." We reason that the lack of a structured question and answer, and the fact that the statements were spontaneously given, support this view. We therefore conclude that the statements were non-testimonial.

## C.    Defendant's Prior Bad Acts and Convictions Were Properly Admitted

{17} Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), Defendant argues that the district court improperly admitted evidence of his prior convictions and restraining order. Defendant contends that their admission was improper under Rule 11-404(B) NMRA. "As a general rule, the [a]dmission of evidence is entrusted to the discretion of the [district] court, and rulings of the [district] judge will not be disturbed absent a clear abuse of discretion." *State v. Trujillo*, 2002-NMSC-005, ¶ 15, 131 N.M. 709, 42 P.3d 814 (alteration in original) (footnote omitted) (internal quotation marks and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Juan*, 2010-NMSC-041, ¶ 33, 148 N.M. 747, 242 P.3d 314 (internal quotation marks and citations omitted). Abuse of discretion occurs when a district court exercises its discretion based on a

misunderstanding of the law. *State v. Elinski*, 1997-NMCA-117, ¶ 8, 124 N.M. 261, 948 P.2d 1209.

**{18}** Generally, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" Rule 11-404(A).

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Rule 11-404(B). Our Supreme Court has held that "[e]vidence is admissible under Rule [11-]404([B]) if it is probative of a material element at issue." *State v. McGhee*, 103 N.M. 100, 104, 703 P.2d 877, 881 (1985). In determining whether the district court abused its discretion in admitting evidence under Rule 11-404(B), we examine "whether the State made a sufficient showing that the evidence would serve a legitimate purpose other than to show character . . . and whether the probative value was substantially outweighed by the danger of unfair prejudice or other factors." *State v. Dietrich*, 2009-NMCA-031, ¶ 40, 145 N.M. 733, 204 P.3d 748 (alteration in original) (internal quotation marks and citation omitted).

**{19}** In this case, Defendant was charged with aggravated stalking of Barbara Olivas. Under the statute applicable at the time, "[s]talking consists of a person knowingly pursuing a pattern of conduct that would cause a reasonable person to feel frightened, intimidated or threatened. The alleged stalker must intend to place another person in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint." NMSA 1978, § 30-3A-3(A) (1997) (amended 2009). Furthermore, "[a]ggravated stalking consists of stalking perpetrated by a person . . . who knowingly violates a permanent or temporary order of protection issued by a court, except that mutual violations of such orders may constitute a defense to aggravated stalking[.]" NMSA 1978, § 30-3A-3.1(A)(1) (1997).

**{20}** Over Defendant's Rule 11-404(B) objections, the district court admitted his 2003 judgment and sentence stemming from his convictions for false imprisonment and battery against a household member. The sixth condition of the 2003 judgment and sentence stated that Defendant was to have no contact with Olivas. The State argued that the no contact provision was necessary to prove the aggravated stalking charge at issue in the present case, and we agree. The State contended that it demonstrated that Defendant's entry into Olivas's house in this case was unlawful and that he engaged in a pattern of conduct to frighten, intimidate, or threaten her. The State asserted that the previous incident showed Defendant's intent, motive, and absence of mistake under Rule 11-404(B). Defendant responded that the judgment and sentence were inadmissible propensity evidence. After argument, the court admitted the evidence. We observe that evidence of Defendant's convictions for false imprisonment and battery on a household member are less probative of his prior relevant conduct than the facts establishing the crimes for which he was convicted. Thus, the fact of

6

conviction may look more like evidence of being a criminal, like criminal propensity evidence, than pattern of conduct evidence that would support a conviction under the stalking statute. Care is needed to avoid confusion, but the use of such evidence was acceptable as the charges directly spoke to physical harm and physical restraint, and the no contact condition of the sentence also constituted a judicial order of protection for the period of time which Defendant was bound by the sentence in that case.

**{21}** Additionally, the district court admitted a stipulated restraining order between Defendant and Olivas. Defendant argues that this was improper character evidence. We conclude that the district court did not abuse its discretion in admitting Defendant's 2003 judgment and sentence and the stipulated restraining order. The State made a sufficient showing at trial that the evidence served the legitimate purpose of proving the requisite elements of aggravated stalking. The judgment and sentence go to the issue of whether a reasonable person in Olivas's position would have felt "frightened, intimidated or threatened" by Defendant. Section 30-3A-3(A). The judgment and sentence provide evidence as to why Olivas might have been intimidated or frightened by Defendant because it shows that Defendant and Olivas had some prior incident and that he was to have no contact with Olivas as a condition of his sentence. In addition, the stipulated restraining order directly proves an element of aggravated stalking and, therefore, has a legitimate purpose in proving Defendant's guilt.

**{22}** The value of neither piece of evidence was outweighed by the danger of unfair prejudice. Both documents were probative of the elements of aggravated stalking. During direct examination of Olivas, the State asked her if she recognized the judgment and sentence document. Olivas stated that it was a "[j]udgment for [s]entencing on a prior incident between [her] and [Defendant]" and that, as a condition of his sentence, Defendant was to have no contact with her. The judgment and sentence showed restraint and battery of Olivas and supported the required pattern of conduct element. The stipulated restraining order also did not unfairly prejudice Defendant as it established an element of aggravated stalking, and its admission did not reveal any prejudicial details upon which the order was based. We hold that the district court did not abuse its discretion in admitting the evidence.

**D.     Cumulative Error**

**{23}** Defendant contends that the above issues amounted to cumulative error. Since we concluded that the district court did not err with regard to the issues appealed, we do not address Defendant's cumulative error argument.

**II.     CONCLUSION**

**{24}** For the foregoing reasons, we affirm Defendant's convictions.

**{25}     IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

7

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**LINDA M. VANZI, Judge**


**Topic Index for _State v. Gutierrez_, Docket No. 28,754**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-AJ | Appellate Jurisdiction |
| AE-CE | Cumulative Error |
| AE-SR | Standard of Review |
| AE-SP | Stay Pending Appeal |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-DO | Domestic Violence |
| | |
| **CP** | **CRIMINAL PROCEDURE** |
| CA-FO | Final Order |
| CA-MT | Mistrial |
| CA-RT | Right to Confrontation |
| | |
| **DR** | **DOMESTIC RELATIONS** |
| DR-RO | Restraining Order |
| | |
| **EV** | **EVIDENCE** |
| EV-AE | Admissibility of Evidence |
| EV-PA | Prior Acts or Statements |
| EV-PC | Prior Convictions or Judgments |
| EV-TE | Taped Evidence |