**Certiorari Denied, December 16, 2011, No. 33,314**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-007**

**Filing Date: November 7, 2011**

**Docket No. 29,976**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellee,**

**v.**

**RAYMOND ARCHULETA,**

        **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Eugenio S. Mathis, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**GARCIA, Judge.**

**{1}**    On or about February 14, 2009, Defendant was found in possession of property which the State alleged had been stolen from the home of Phillip Baca and Denise Velarde. Defendant ran from police officers, depositing a stolen watch and a syringe in a garbage bin. He was charged with burglary, possession of stolen property with a value in excess of $500, possession of drug paraphernalia, tampering with evidence, and resisting arrest. Defendant was ultimately acquitted of both burglary and possession of drug paraphernalia, but convicted of all other charges. On appeal, Defendant contends that: (1) the district court

erred in denying his motions for a continuance and to reappoint counsel after Defendant waived his right to counsel and moved to represent himself; (2) there was insufficient evidence that Defendant possessed stolen property with a value in excess of $500, a fourth-degree felony and, thus, there was also insufficient evidence to support Defendant's conviction for tampering with evidence of a fourth-degree felony; (3) the admission of certain statements by one of the State's witnesses constituted fundamental error and violated Defendant's confrontation clause rights; and (4) cumulative error deprived Defendant of his right to a fair trial. For the reasons that follow, we find no error and affirm.

## DISCUSSION

### I. Defendant's Motions for a Continuance and to Reappoint Counsel

**{2}** Defendant argues that the district court erred in denying his motions for a continuance and to reappoint counsel. At trial, Defendant was initially represented by counsel but, on June 23, 2009, Defendant requested that he be allowed to represent himself. The court conducted an extensive inquiry, advising Defendant of the potential consequences of choosing to proceed *pro se*. Throughout the inquiry, Defendant continually maintained that he understood the risks and that he still wished to represent himself. The district court granted his motion, finding that Defendant had knowingly, voluntarily, and intelligently waived his right to counsel and relieved Defendant's counsel from his representation. On the same date, Defendant was informed that the matter was scheduled for trial on September 10, 2009.

**{3}** On September 9, 2009, the day before trial, Defendant moved to continue the trial, asserting that he was unprepared because he had not been able to physically see some of the stolen items to prepare his case and because he had been able to spend only approximately one hour in the detention center library since receiving additional discovery from the State approximately two weeks earlier. The court asked Defendant what specific items he needed to see, and he identified a cell phone, sunglasses, and an earring, all being items which ultimately were not used in securing Defendant's convictions. The court asked Defendant why the inventory list and photographs that were in his possession were not sufficient, and Defendant merely maintained that he was not given full discovery because he was not able to personally see all actual items. The district court denied Defendant's motion for a continuance and found that Defendant had not provided sufficient reasons why he was unable to be prepared for trial the next day.

**{4}** Immediately after Defendant's motion to continue was denied, Defendant made a motion to have counsel reappointed. Defendant asserted the same arguments he made regarding his motion for a continuance, arguing that he had not had adequate time to prepare his case and that he had not received full discovery. The district court denied Defendant's motion, stressing that Defendant was making the request the day before trial when he had already waived his right to counsel and requested to represent himself.

### A. Defendant's Motion for a Continuance

**{5}** The grant or denial of a motion for a continuance rests within the sound discretion of the trial court, and the burden of establishing an abuse of discretion rests with the defendant. *State v. Sanchez*, 120 N.M. 247, 253, 901 P.2d 178, 184 (1995); *see State v. Perez*, 95 N.M. 262, 264, 620 P.2d 1287, 1289 (1980) ("[I]n the absence of demonstrated abuse resulting in prejudice to the defendant there is no ground for reversal."). "Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *State v. Brazeal*, 109 N.M. 752, 756, 790 P.2d 1033, 1037 (Ct. App. 1990) (internal quotation marks and citation omitted).

**{6}** Factors that a court considers when weighing the merits of a continuance request are (1) the length of the delay, (2) the likelihood that a delay would accomplish the movant's objectives, (3) the existence of previous continuances in the same matter, (4) the degree of inconvenience to the parties and the court, (5) the legitimacy of the motives in requesting the delay, (6) the fault of the movant in causing a need for the delay, and (7) the prejudice to the movant in denying the motion. *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20. While this was Defendant's first request for a continuance, there were various additional reasons justifying the court's denial of Defendant's motion. Defendant's request came the day before trial, after he had been previously informed and reminded on multiple occasions of the upcoming trial date. The granting of Defendant's eleventh-hour motion would have likely caused significant inconvenience to the court and the State, both of which had prepared for Defendant's trial the following day. Additionally, the factors regarding the likelihood that a delay would accomplish the movant's objectives and the prejudice to the movant hold relatively little or no weight in this circumstance. The evidence Defendant requested to physically inspect after it was viewed in the pre-trial photographs was never offered or used against him. In addition, Defendant failed to articulate how waiting one day to view the physical evidence rather than the photographs of the evidence caused him any prejudice. Finally, Defendant's reasons for a continuance failed to identify a legitimate motive that justified postponing the trial. As a result, Defendant did not meet his burden by sufficiently explaining why Defendant's limited time in the detention center library and the allegedly missing and late discovery provided compelling reasons for a continuance. Under these circumstances, we cannot say that the district court abused its discretion in denying Defendant's motion to continue.

### B.    Defendant's Motion to Reappoint Counsel

**{7}** Defendant also challenges the court's denial of his motion to reappoint counsel. In *State v. Vincent*, we followed the lead of multiple out-of-state jurisdictions to hold that once a defendant has validly waived his right to counsel, he may not later demand the assistance of counsel as a matter of right. 2005-NMCA-064, ¶ 48, 137 N.M. 462, 112 P.3d 1119; *see State v. Canedo-Astorga*, 903 P.2d 500, 504 (Wash. Ct. App. 1995) ("After a competent defendant has made a valid waiver, reappointment is a matter for the discretion of the trial court."); *State v. Gallegos*, 2006 UT App 404, ¶ 10, 147 P.3d 473 (Utah Ct. App. 2006) ("A trial court's denial of a motion to reappoint counsel, where the motion follows a proper waiver of the right to counsel, will be overturned only for an abuse of discretion."); *People*

*v. Cruz*, 147 Cal. Rptr. 740, 747 (Ct. App. 1978) ("The decision whether to reappoint counsel after a waiver of that right appears to be a matter within the discretion of the trial court."). However, in exercising discretion, a trial court should consider all the facts and circumstances of the case.

> Because [s]elf-representation is a grave undertaking, one not to be encouraged, the request for reappointment should be granted absent reasons to deny. In some cases, however, there will be reasons to deny—for example, that the request comes on the eve of or during trial, and will delay or interrupt the trial if granted.

*Canedo-Astorga*, 903 P.2d at 504 (alteration in original) (footnote omitted) (internal quotation marks omitted). We must review whether the district court abused its discretion when it denied Defendant's motion to reappoint counsel on the eve of trial.

**{8}** First, we now adopt the approach taken by the California Supreme Court in *People v. Lawrence* to provide guidance to the trial court when determining whether to grant a *pro se* defendant's motion to reappoint counsel. 205 P.3d 1062, 1066-67 (Cal. 2009) (citing *People v. Elliot,* 139 Cal. Rptr. 205, 210-11 (Ct. App. 1977)). There, the court suggested that a trial court should apply the following factors when faced with a defendant's request to reappoint counsel: (1) the defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of the defendant's effectiveness in defending against the charges if required to continue to act as his own attorney. *Id.*

**{9}** After considering the totality of the circumstances surrounding Defendant's request for reappointment of counsel, we conclude the district court did not abuse its discretion in denying the request. Here, we note that Defendant had the benefits of previously appointed counsel who assisted with his case before he moved to represent himself. Defendant was thoroughly and adequately apprised by the district court of the inherent risks involved in self-representation before he made a valid waiver of his right to counsel. Months later, he moved to reappoint counsel on the day before trial was set to begin.

**{10}** The district court found that Defendant's offered reasons to reappoint counsel were insufficient, and we agree. It was unclear what additional assistance Defendant needed and why he felt the inventory list and photographs of the items in his possession were inadequate to allow him to prepare his defense. He did not explain or articulate why such a personal inspection of certain physical evidence seized from him at the time of arrest was needed to prepare his defense versus viewing the evidence personally the following day at trial. Further, granting Defendant's motion would clearly have caused substantial delay to the proceedings, as the request came on the eve of trial and would have required last minute rescheduling for the court, witnesses, and jurors who had been secured to attend the following day. The case itself was a relatively routine stolen property matter and Defendant never expressed any concern regarding its nature or complexity. The dismissal of one of the

original charges and the not guilty verdict rendered on one other charge further attest to Defendant's ability to represent himself in an adequate manner. Under these circumstances, we find no abuse of discretion in the denial of Defendant's request for reappointment of counsel.

**{11}** Defendant alternatively asks the Court to adopt the approach taken by the state of Washington in *State v. Silva*, 27 P.3d 663, 673 (Wash. Ct. App. 2001) (holding that the Washington Constitution affords a pretrial detainee who has exercised his constitutional right to represent himself a right of reasonable access to state-provided resources that will enable him to prepare a meaningful pro se defense). We decline to do so. Because Defendant failed to advise the district court that he was either requesting or asserting an expanded right under the New Mexico Constitution, this issue is not properly before this Court. *State v. Gomez*, 1997-NMSC-006, ¶¶ 19, 22, 122 N.M. 777, 932 P.2d 1 (where the provision has never before been addressed under our interstitial analysis, trial counsel additionally must argue that the state constitutional provision should provide greater protection, and suggest reasons as to why, for example, "a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics").

## II.     Denise Velarde's Statements Regarding the Value of the Stolen Property

**{12}** At trial, the State called Denise Velarde, who resided in the burglarized home with her husband, Phillip Baca. Ms. Velarde testified to the items stolen from their home and the value of those items, including an iPod valued at $150, tennis shoes valued at $110, an internet card valued at $220, three cellular phone chargers valued at $25 each, and a watch valued at $100. The State also entered into evidence photographs of the stolen items which were taken by Phillip Baca prior to the burglary. When testifying about the watch, Ms. Velarde stated that she knew how much it was worth because her husband told her the value. Defendant argues on appeal that the admission of Ms. Velarde's testimony violated Defendant's confrontation clause rights because Ms. Velarde's statement regarding the watch's value constituted inadmissible hearsay, and she otherwise did not indicate how she had personal knowledge of the other items' values.

**{13}** We note that Defendant failed to preserve the confrontation and personal knowledge issues in the district court. Because Defendant never objected to the admission of the statements below, we only review the statements to determine whether their admission created fundamental error. *State v. Cunningham*, 2000-NMSC-009, ¶ 8, 128 N.M. 711, 998 P.2d 176; *see State v. Martinez*, 2007-NMSC-025, ¶ 25, 141 N.M. 713, 160 P.3d 894 (reviewing a defendant's Confrontation Clause claim for fundamental error even though the issue was not preserved); *State v. Aguilar*, 117 N.M. 501, 507, 873 P.2d 247, 253 (1994) (reviewing for fundamental error based upon improper statements and arguments presented to the jury). Fundamental error occurs only in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633. It applies "in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997-NMSC-045, ¶ 41, 124 N.M. 55, 946 P.2d 1066, *overruled on other grounds*

*by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. Defendant argues that the statements amounted to fundamental error at trial because Defendant was never able to cross-examine Mr. Baca. We disagree.

**{14}**    In this case, the admission of Ms. Velarde's testimony was not fundamental error. We note that even if Ms. Velarde's statement regarding the watch's value should have been excluded as hearsay, the value of the other items admitted into evidence still totaled more than the $500 threshold amount. Because there was sufficient additional evidence for a jury to find Defendant guilty, we find no fundamental error. *See State v. Rodriguez*, 81 N.M. 503, 505, 469 P.2d 148, 150 (1970) ("If there is substantial evidence . . . to support the verdict of the jury, we will not resort to fundamental error.").

### III.    Sufficiency of the Evidence of the Value of Stolen Property

**{15}**    Defendant argues that the evidence presented at trial was insufficient to result in his conviction for fourth-degree receiving stolen property and for tampering with evidence. Our review of a sufficiency of the evidence question involves a two-step process. *See State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994). Initially, we view the evidence in the light most favorable to the verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict, and then we must "make a legal determination of whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). The question is whether the district court's "decision is supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683.

**{16}**    To convict Defendant of fourth-degree receiving stolen property, the State was required to prove that: (1) the iPod, wireless internet card, Pittsburgh Steelers watch, Jordan tennis shoes, and phone chargers had been stolen; (2) Defendant kept this property; (3) at the time Defendant kept the property, he knew or believed it had been stolen; (4) the property had a market value of over $500; and (5) this happened in New Mexico on or about February 14, 2009. The jury was further instructed that market value means the price at which the property could ordinarily be bought or sold at the time of the alleged receipt of stolen goods. Defendant challenges only whether the State sufficiently proved that the market value of the items possessed exceeded $500.

**{17}**    We find no basis in the record to support Defendant's argument that Ms. Velarde only testified to the purchase price of the items, not their market value. Ms. Velarde did, in reference to the tennis shoes and wireless internet card, indicate that she knew the value of the items because she and her husband "bought them." Ms. Velarde testified that the tennis shoes were purchased only a week and a half prior to the burglary, and that the internet card

was purchased from her husband's workplace. As to the other items, Ms. Velarde was questioned, without objection, as to the "value" of the items. The relationship between the market value and purchase price of these items was never disputed by Defendant or explored further with Ms. Velarde. In the light most favorable to the verdict, Ms. Velarde's testimony of the value of the stolen items, particularly when coupled with photographic and physical exhibits of the items entered into evidence at trial, was sufficient to allow the jury to conclude that the market value of the items possessed by Defendant exceeded $500. It is well settled that an owner of personal property may testify concerning the value of the property and that such testimony is sufficient to support a jury's determination of value. *State v. Dominguez*, 91 N.M. 296, 299-300, 573 P.2d 230, 233-34 (Ct. App. 1977); *State v. Zarafonetis*, 81 N.M. 674, 677, 472 P.2d 388, 391 (Ct. App. 1970). "The reason for this rule is that the owner necessarily knows something about the quality, cost, and condition of his or her property and consequently knows approximately what it is worth." *State v. Hughes*, 108 N.M. 143, 146, 767 P.2d 382, 385 (Ct. App. 1988). Based on Ms. Velarde's testimony valuing the stolen items and exhibits depicting the items stolen, the jury could reasonably infer that the market value of the stolen items exceeded $500. Because substantial evidence supports the jury's determination that Defendant possessed property valued over $500, we affirm Defendant's conviction for fourth-degree receiving stolen property.

**{18}** Defendant also argues that because there was insufficient evidence to convict Defendant of fourth-degree receiving stolen property, there is also insufficient evidence to convict Defendant of tampering with evidence, another fourth-degree felony. Because we have rejected Defendant's argument holding that there was sufficient evidence to support Defendant's conviction for possession of stolen property, we also reject Defendant's identical arguments that there was insufficient evidence of tampering with evidence.

## IV. Cumulative Error

**{19}** Defendant argues that the cumulative effect of the various alleged errors outlined above, including Ms. Velarde's testimony regarding the value of the stolen property and the court's denial of his motions to continue and to reappoint counsel, denied Defendant a fair trial. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *modified on other grounds by State v. Gallegos*, 2007-NMSC-007, ¶ 17, 141 N.M. 185, 152 P.3d 828. The cumulative error doctrine is strictly applied and may not be successfully invoked if "the record as a whole demonstrates that the defendant received a fair trial." *State v. Trujillo*, 2002-NMSC-005, ¶ 63, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted). We recognize the doctrine of cumulative error in the State of New Mexico; however, it has no application if no errors are committed and if the defendant has received a fair trial. *State v. Seaton*, 86 N.M. 498, 501, 525 P.2d 858, 861 (1974); *State v. Carr*, 95 N.M. 755, 769, 626 P.2d 292, 306 (Ct. App. 1981), *overruled on other grounds as recognized by State v. Olguin*, 120 N.M. 740, 906 P.2d 731. Because we have held that there was no error, we conclude that the cumulative error doctrine does not apply. *See State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211 (holding that when there is no error, "there is no

cumulative error").

**CONCLUSION**

**{20}** For the foregoing reasons, we affirm Defendant's convictions.

**{21} IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**


_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for _State v. Archuleta_, No. 29976**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-AR | Appellate Review |
| AE-CE | Cumulative Error |
| AE-FE | Fundamental Error |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-CT | Confrontation |
| CT-RF | Right to Confrontation |
| CT-WR | Waiver of rights |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CL | Controlled Substances |
| CL-PS | Possession |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-CU | Continuance |
| CA-CE | Cumulative Error |
| CA-PS | Pro Se |
| CA-RT | Right to Confrontation |
| CA-RC | Right to Counsel |