This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38215**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MARIO ARREOLA-VARELA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM
Steven Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Mario Arreola-Varela broke into his estranged wife's home, in direct violation of a restraining order, resulting in a conviction of breaking and entering, contrary to NMSA 1978, Section 30-14-8(A) (1981). On appeal, Defendant argues that the district court abused its discretion in admitting evidence related to the restraining order, denying his request for a continuance of the trial, and denying his motion for a mistrial. We affirm.

**BACKGROUND**

**{2}** Mayra Ortega-Mustas and her friend Mario Marias-Cano, were at a nightclub, when Defendant, Mayra's husband, entered the club and walked towards Mayra. An argument ensued between Mayra and Defendant, prompting the club's staff to escort Defendant out of the establishment. Later that night, Mario and Mayra drove back to Mayra's home and were conversing in the living room, when they heard a noise coming from the back door. Startled, Mayra ran towards the back door and saw Defendant attempting to enter the home. However, because the steps were missing from the back door entrance, and because Defendant may have been intoxicated, he was unable to enter. A few moments later, Mario heard a noise that sounded as if someone kicked the front door and then saw Defendant enter the home through the front door. According to Mario, Defendant moved "towards the bedroom" while brandishing a knife and threatening to harm Mario. In response to this threat, Mario punched Defendant in the face, causing Defendant to drop the knife.

**{3}** In response to this incident, the police were dispatched to Mayra's home and Sheriff's Deputy Nikki Large was the first officer to arrive. Upon arrival, she observed that Defendant appeared "highly intoxicated" and was "bleeding from his face and his hand." Deputy Large observed the "doorframe had been broken near the locking mechanism" and saw pieces of the doorframe near the entryway. Deputy Large observed Defendant speaking to another officer and testified that Defendant nodded affirmatively when asked if he had broken the door.

**{4}** On the date of this incident, there was an active restraining order in place prohibiting Defendant from going within "25 yards" of Mayra as well as within "100 yards" of her home. The State charged Defendant with breaking and entering, aggravated assault with a deadly weapon, and violation of a restraining order prohibiting domestic violence. Prior to trial, the State dismissed Defendant's charge of violating a restraining order prohibiting domestic violence. A jury convicted Defendant of breaking and entering and acquitted him of aggravated assault with a deadly weapon. Defendant appeals.

**DISCUSSION**

**I.      Admission of Restraining Order**

**{5}** Defendant argues the district court abused its discretion in admitting into evidence a temporary restraining order, which preceded entry of an active permanent restraining order (PRO), and exhibits related thereto (collectively, the exhibits).[1] He argues the exhibits were inadmissible because (1) they were improper character evidence under Rule 11-404(B) NMRA, and the Petition contained allegations of domestic abuse that were more prejudicial than probative under Rule 11-403 NMRA, (2) the allegations contained in the exhibits were inadmissible hearsay, and (3) admission

---

1The exhibits included: a temporary order of protection and order to appear (TRO), a petition for temporary order of protection from domestic abuse (Petition), a default PRO.

of the exhibits violated Defendant's right to confrontation. We address each argument in turn.

## A.      Rule 11-404(B) and Rule 11-403

**{6}**      Defendant contends that the district court abused its discretion in admitting the exhibits under Rule 11-404(B)(2) because the exhibits had no "alternative purpose other than to show [Defendant's] propensity to act violently" and because the Petition, which contained allegations of domestic abuse, was more prejudicial than probative under Rule 11-403. We disagree.

**{7}**      "As a general rule, the admission of evidence is entrusted to the discretion of the district court, and rulings of the district judge will not be disturbed absent a clear abuse of discretion." *State v. Gutierrez*, 2011-NMCA-088, ¶ 17, 150 N.M. 505, 263 P.3d 282 (alterations, internal quotation marks, and citation omitted). An abuse of discretion occurs when the district court's ruling is "clearly against the logic and effect of the facts and circumstances of the case." *State v. Woodward*, 1995-NMSC-074, ¶ 6, 121 N.M. 1, 908 P.2d 231 (internal quotation marks and citation omitted), *abrogated on other grounds as recognized by State v. Montoya*, 2014-NMSC-032, 333 P.3d 935. An abuse of discretion will only be reversible error if "the error was prejudicial rather than harmless." *State v. Jett*, 1991-NMSC-011, ¶ 8, 111 N.M. 309, 805 P.2d 78 (citation omitted).

**{8}**      Generally, character evidence, which includes evidence of crimes, wrongs, or other acts, is inadmissible to prove a defendant acted in accordance with those acts. Rule 11-404(A)(1), (B)(1). However, this evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2). Evidence probative of a material element at issue is also admissible under Rule 11-404(B). *See Gutierrez*, 2011-NMCA-088, ¶ 18. For instance, this Court has previously held that a district court properly admitted restraining order evidence, under Rule 11-404(B), when it was relevant to a material element of a criminal offense. *See Gutierrez*, 2011-NMCA-088 ¶ 21. In *Gutierrez*, we concluded that admission of a restraining order was relevant to a material element of the aggravated stalking statute when the defendant violated the restraining order in his encounter with the victim. *See id.*

**{9}**      In this case, to convict Defendant of breaking and entering, the State needed to prove, in relevant part, an "unauthorized entry of any . . . dwelling[.]" Section 30-14-8(A). Here, as in *Gutierrez*, the State sought to admit the TRO to show Defendant knew that he was prohibited from having contact with Mayra and, therefore, unauthorized to enter her home. 2011-NMCA-088 ¶ 21. As in *Gutierrez*, we conclude the TRO is relevant to a material element of the criminal offense with which Defendant was charged. The fact that Defendant was prohibited from having contact with Mayra and prohibited from being within 100 yards of her home is probative of Defendant's knowledge that his entry was "unauthorized." *See id.*

**{10}**     Nevertheless, Defendant argues the PRO was irrelevant and inadmissible under Rule 11-404(B)(2) because he was not properly served with the PRO, which was entered as a default order since he was absent from the hearing at the time the order was issued. Defendant argues he lacked knowledge and/or notice of the PRO and the provisions contained therein and accordingly contends it has no probative value. Defendant's argument is unavailing. The State produced a return of service signed by Defendant showing that he was served with the TRO and order to appear. The TRO explicitly notified Defendant of the date, time, and location of the hearing scheduled to determine whether the PRO would be issued against him. The TRO advised Defendant of the consequences should he fail to appear for the scheduled hearing, stating, "an extended order may be entered by default against [Defendant] and a bench warrant may be issued for [Defendant's] arrest." Defendant failed to appear for the hearing following the entry of the TRO, resulting in the district court's issuance of the PRO by default. Because Defendant had notice that the district court could extend the no contact provisions beyond the original time listed in the TRO, and because the provisions of the TRO put Defendant on notice that he was prohibited from contacting Mayra, the TRO was relevant to Defendant's knowledge that he was prohibited from entering Mayra's home. Any arguments to the contrary go to the weight of the evidence, not its admissibility, and ultimately, it is the function of the jury to weigh the evidence. *See State v. Martin*, 1984-NMSC-077, ¶ 25, 101 N.M. 595, 686 P.2d 937. Accordingly, there was a legitimate, non-character purpose for the admission of the exhibits under Rule 11-404(B), and therefore, the district court did not abuse its discretion in admitting such evidence.

**{11}**     We next address Defendant's argument that the allegations of domestic abuse set forth in the Petition were more prejudicial than probative under Rule 11-403 and should not have been admitted into evidence. Defendant's argument under Rule 11-403 is only developed with respect to the allegations of domestic abuse set forth in the Petition. We therefore confine our analysis accordingly.

**{12}**     Under Rule 11-403 a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Assuming without deciding that the allegations of domestic abuse in the Petition were inadmissible under Rule 11-403, we nonetheless conclude that any error that resulted was harmless. In determining the "likely effect of the error, courts should evaluate all of the circumstances surrounding the error. This requires an examination of the error itself, which depending upon the facts of the particular case could include an examination of the source of the error and the emphasis placed upon the error." *State v. Tollardo*, 2012-NMSC-008, ¶ 43, 275 P.3d 110. "Of course, evidence of a defendant's guilt separate from the error may often be relevant, even necessary, for a court to consider, since it will provide context for understanding how the error arose and what role it may have played in the trial proceedings; but such evidence, as discussed above, can never be the singular focus of the harmless error analysis[.]" *Id.* "[C]ourts may, depending upon the circumstances of the cases before them, examine the importance of the erroneously admitted evidence in the prosecution's case, as well as whether the error was

cumulative or instead introduced new facts." *Id.* (alterations, internal quotation marks, and citation omitted). Harmless error review requires a "case-by-case analysis." *Id.*

**{13}** Here, while the allegations of domestic abuse in the Petition introduced new facts, the State placed no emphasis on the allegations in the Petition during its case in chief and so they were unimportant to the State's case. And, despite Defendant's testimony that he had not "committed a crime" because he was authorized to enter Mayra's home, which was also "[his] house," there was ample evidence for the jury to consider in evaluating his charge for breaking and entering outside of the allegations in the Petition. This evidence included the fact that Defendant attempted to enter the back door of the home, the broken pieces of the doorframe strewn around the front door, as well as Defendant's own admission to law enforcement that he did indeed break the front door to enter the home. Because the State did not place an emphasis on the allegations of domestic abuse, the allegations were unimportant to the State's case, and there was ample evidence of Defendant's guilt outside of the error, we hold that the admission of the allegations of domestic abuse in the Petition was harmless.

## B.      Hearsay

**{14}** For the same reasons we determined the admission of the Petition was harmless, we likewise conclude any purported error does not rise to the level of plain error. *See State v. Lopez*, 2018-NMCA-002, ¶ 35, 410 P.3d 226 ("By its nature, harmless error would not be sufficiently prejudicial to establish grave doubts in the minds of the jury and therefore would not rise to a level sufficient to establish plain error.")."

## C.      Confrontation Clause

**{15}** Defendant argues the district court's admission of Mayra's allegations in the Petition violated his right to confront and cross-examine Mayra because she did not testify during trial. Defendant concedes that he failed to raise this argument below, and requests that we review it for fundamental error. We decline to do so. An appellate court "in its discretion" can consider issues involving fundamental error. Rule 12-321(B)(2)(c) NMRA. However, a defendant must develop an argument sufficient for our review. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181. Because Defendant failed to develop an argument on appeal, we decline to address this issue. *See State v. Dickert*, 2012-NMCA-004, ¶ 35, 268 P.3d 515 (declining to engage in fundamental error review where the defendant failed to develop an argument).

## II.     The District Court Did Not Abuse Its Discretion in Denying Defendant's Request for a Continuance of Trial

**{16}** Defendant asserts the district court abused its discretion in denying his request for a continuance of the trial because the State's "late disclosure" of the exhibits caused the need for the delay to obtain divorce documentation, ostensibly relevant to rebutting information in the exhibits. We review the district court's denial of a continuance for an

abuse of discretion. *See State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. A district court abuses its discretion only if its "ruling is clearly against the logic and effects of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**{17}**   In determining whether a district court abused its discretion in denying a request for a continuance, we consider the following factors: (1) the existence of previous continuances in the same matter; (2) the degree of inconvenience to the parties and the court; (3) the likelihood that a delay would accomplish the movant's objectives; (4) the prejudice to the movant in denying the motion; (5) the length of the requested delay; (6) the legitimacy of the motives in requesting the delay; and (7) the fault of the movant in causing a need for the delay. *See State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20. We focus our analysis on the *Torres* factors for which the record is adequately developed.[2]

**{18}**   In addressing the first factor, the record reflects that both the State and Defendant previously moved the district court to continue the trial. The State filed three previous stipulated motions to continue, all of which were to reschedule pretrial interviews with its witnesses. Considering that the district court granted all three of the State's requests to continue the trial and that Defendant's requested continuance at issue in this case was his first request to continue the trial, this *Torres* factor supports Defendant's argument in favor of a continuance.

**{19}**   Defendant argues that, as to the second *Torres* factor, "any inconvenience caused to the parties and the court were caused by the State's late disclosure[.]" We are unpersuaded. Requests for continuances on the day of trial are generally disfavored, and "we presume resetting the trial date on the day trial is supposed to begin is inconvenient for the parties and for the court." *State v. Gonzales*, 2017-NMCA-080, ¶ 36, 406 P.3d 534; *see State v. Aragon*, 1997-NMCA-087, ¶ 22, 123 N.M. 803, 945 P.2d 1021 ("[A]s a general rule, a motion for continuance filed at the last minute is not favored."). Here, Defendant orally requested a continuance on the first day of trial after voir dire, while the jurors remained in the courthouse. Consequently, it can be presumed that the requested delay would have inconvenienced the district court and the State.

---

2In this case, the record is silent or undeveloped regarding the length of Defendant's requested delay and whether Defendant contributed to the need for a delay. As an initial matter, our review of the record does not reveal exactly how long of a delay Defendant sought. Next, the record is undeveloped as to whether Defendant contributed to the need for his requested continuance. While the record indicates that Defendant knew of the TRO early in the case, there is nothing in the record to demonstrate that this knowledge would have allowed him to procure the divorce documentation sooner. Because we cannot glean anything from the record relating to these factors, they do not inform our analysis. *See State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296 ("Matters not of record present no issue for review."); *see also Rojo*, 1999-NMSC-001, ¶ 53 ("Where there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the [district] court's judgment." (internal quotation marks and citation omitted)).

**{20}**     As to the third and sixth factors, Defendant's purported objective in seeking a continuance was to obtain documentation regarding Defendant's pending divorce, which he claimed was "relevant to rebutting the [PRO]." Defendant argues that "his motive [in requesting a continuance] was legitimate, since this highly prejudicial evidence of being previously violent and using a knife [as alleged in the Petition] would now be asserted at trial without the defense being able to challenge the person who made the statements." Specifically, defense counsel stated below, "I don't have all the divorce paperwork which would be relevant to rebutting the order of protection because of the late notice. I *think* I need the [divorce] paperwork." (Emphasis added.) Other than this vague and speculative articulation as to his need for the documentation, defense counsel failed to make any showing of the potential evidentiary value of the documentation. A defendant must "identify a legitimate motive [to] justif[y] postponing the trial." *State v. Archuleta*, 2012-NMCA-007, ¶ 6, 269 P.3d 924. Because defense counsel failed to elaborate below or provide an offer of proof as to why the documentation was relevant, or how a continuance would have helped him access the documentation, defense counsel failed to demonstrate that the delay would accomplish a legitimate purpose. *See id.* Furthermore, since Defendant failed to articulate a legitimate purpose in requesting the documentation, or explain the documentation in detail, we are unable to determine whether a delay in the trial would have "accomplish[ed] Defendant's] objective." *See Torres*, 1999-NMSC-010, ¶ 10.

**{21}**     Lastly, looking at the seventh factor, Defendant failed to establish prejudice resulting from the district court's denial of his request for a continuance. Defendant asserts that he was prejudiced because he was "not able to further investigate ways to counter" the exhibits. However, again, defense counsel failed to articulate a substantive reason for needing the divorce documentation, let alone show that the inability to access the documentation prejudiced his defense. In *Gonzales*, we faced an analogous circumstance where the defendant requested a continuance but failed to articulate why a denial of his request would prejudice his defense. 2017-NMCA-080, ¶ 39. There, the defendant requested the delay to secure the presence of an additional witness, but in making the request, simply asserted that he "believe[d] the information . . . would be relevant to the defense." *Id.* As in *Gonzales*, Defendant failed to clearly articulate how the district court's denial prejudiced him and, thus, this factor weighs against him.

**{22}**     In sum, the facts and circumstances surrounding Defendant's request for a continuance did not favor delaying his trial. Since the district court's ruling was not clearly against the logic and effects of these facts and circumstances, we hold that the district court did not abuse its discretion in denying Defendant's motion for a continuance.

### III.     The District Court Did Not Abuse Its Discretion in Denying Defendant's Motion for a Mistrial

**{23}**     Finally, Defendant argues the district court abused its discretion by failing to declare a mistrial after the State improperly commented on Defendant's "right to remain silent" and further contends that there is a reasonable probability the comment affected

the verdict, "as [Defendant's] failure to tell the police more details between the time of his arrest and trial undercut his sworn trial testimony." Defendant testified during direct examination that he went to Mayra's home on the day in question because he was worried about his children. On cross-examination, the State inquired into Defendant's testimony, first by asking if Defendant was "worried" about his children, and if this worry was the primary reason for entering the home, to which Defendant replied, "Yes." A few minutes later, and without objection from defense counsel, the State asked, "You never told the police that, did you?" to which Defendant responded, "No." During closing argument, the State referenced the exchange and argued that Defendant "never [told] police he [was] worried about his kids. That comes up for the first time today, two and a half years later." Defense counsel objected to this comment, and this is the basis for our review.

**{24}** "We review a trial court's denial of a motion for mistrial under an abuse of discretion standard." *State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and facts and circumstances of the case." *State v. Simonson*, 1983-NMSC-075, ¶ 22, 100 N.M. 297, 669 P.2d 1092. However, whether the state improperly commented on a defendant's right to remain silent is a legal question that we review de novo. *State v. Foster*, 1998-NMCA-163, ¶ 8, 126 N.M. 177, 967 P.2d 852. To determine whether the state impermissibly commented on a defendant's right to remain silent, we apply a two-part analysis. First, we determine whether the state's language was "such that the jury would naturally and necessarily have taken them to be comments on the exercise of the right to remain silent." *State v. Pacheco*, 2007-NMCA-140, ¶ 12, 142 N.M. 773, 170 P.3d 1011 (internal quotation marks and citation omitted). If we conclude it was a comment directed toward a defendant's right to remain silent, only then do we determine if the comments were "a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Id.* (internal quotation marks and citation omitted).

**{25}** In *Rojo*, during closing argument the state highlighted an inconsistency between the defendant's testimony at trial and his initial statement to law enforcement upon arrest. 1999-NMSC-001, ¶¶ 54-55. Our Supreme Court concluded that, "given that [the d]efendant spoke with the arresting officer after receiving *Miranda* warnings and testified in his own defense at trial, the prosecutor's statement during closing arguments cannot be construed as a comment on [the d]efendant's failure to testify or his invocation of the right to remain silent after his arrest. Rather, when taken in context, the prosecutor's statement appears to address the credibility of [the defendant.]" *Id.* ¶ 56.

**{26}** The same holds true here.[3] The State's comment during closing argument merely highlighted an inconsistency between what Defendant told law enforcement and the version of events Defendant testified to at trial. As the Court reasoned in *Rojo*, the state

---

3In the absence of any evidence or arguments to the contrary, we assume, without deciding, that Defendant's admission to law enforcement occurred post-arrest and after he received *Miranda* warnings. *See State v. DeGraff*, 2006-NMSC-011, ¶ 18, 139 N.M. 211, 131 P.3d 61 (presuming that *Miranda* warnings were given where it would benefit the defendant).

can comment on a defendant's silence if the comment is tailored toward an attack on a defendant's credibility. *See id.* A defendant "does not remain silent with respect to the subject matter of *his own statement.*" *Foster*, 1998-NMCA-163, ¶ 17 (emphasis added) (internal quotation marks and citation omitted). Therefore, the State did not comment on Defendant's right to remain silent but rather made a permissible reference concerning Defendant's credibility. Because the State's comment during closing argument was not a comment on Defendant's right to remain silent, we need not address the second part of the analysis. *See Pacheco*, 2007-NMCA-140, ¶ 12.

**{27}** Accordingly, we hold that the district court did not abuse its discretion in denying Defendant's motion for a mistrial.

**CONCLUSION**

**{28}** We affirm.

**{29}  IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JENNIFER L. ATTREP, Judge**