This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                                   **No. 29,768**

**KIRT L. DARNER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Camille Martinez-Olguin, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Billy R. Blackburn
Paul Linnenburger
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

**{1}** Defendant Kirt Darner appeals a sentence imposed pursuant to a guilty plea. Defendant argues that his sentence violated his right to due process and that the strictures of the sentence constituted cruel and unusual punishment. For the reasons that follow, we affirm in part and reverse in part. We remand with instructions to the court to remedy the errors in Defendant's sentence.

**Background**

**{2}** Defendant was the owner of a New Mexico game park. Following an investigation by the New Mexico Game and Fish Department, a grand jury issued a twenty-count indictment against him for crimes related to his operation of the park and for possession of two trophy sheep skulls that were stolen property from Colorado. Defendant pleaded guilty to (1) receiving stolen property (a Desert Bighorn Sheep head), a third degree felony, contrary to NMSA 1978, Section 30-16-11(A) and (G) (2006); (2) transporting stolen livestock (a live Bull Elk), a fourth degree felony, contrary to NMSA 1978, Section 30-18-6 (1963); and (3) failing to submit an invoice for the sale of game (a live Bull Elk), a misdemeanor, contrary to NMSA 1978, Section 17-4-16 (1912), NMSA 1978, Section 17-2-7(A)(2) and (C) (1979), and NMSA 1978, Section 17-2-10(A)(9) (1999). Pursuant to the plea agreement, the remaining charges were dismissed.

**The Plea Agreement**

{3} In relevant part, the plea agreement included the following provisions. The State agreed that Defendant's sentence for the misdemeanor would run concurrently with any sentence that he received for the two felony counts. Further sentencing decisions were left to the district court's discretion. The plea agreement also stated that the State was not recommending a conditional discharge. And it provided that Defendant would "make restitution on all charges arising out of the files of the [d]istrict [a]ttorney even if those charges are dismissed or not filed because of this agreement."

{4} The district court held a plea hearing during which Defendant verbally acknowledged, among other things, the maximum penalties associated with each crime to which he pleaded guilty. The district court accepted the plea agreement and indicated that it would order a pre-sentence report. The parties agreed to postpone sentencing "until a later date."

{5} In advance of sentencing, Defendant filed a sealed pleading objecting to the pre-sentence report[1] on a number of grounds. Among the bases for Defendant's objections were that the probation office failed to verify Defendant's statements regarding his personal history, then included those statements in the pre-sentence report with the caveat that they were "unverified." Defendant also objected to the pre-

---

[1] The pre-sentence report itself is not part of the record on appeal.

sentence report on the bases that the evaluation and recommendation were "untrustworthy," that the report contained "irrelevant and false accusations," and that the report was so "ill prepared" that it should be disregarded. Defendant's objections to the pre-sentence report included numerous exhibits verifying some of the "unverified" statements and refuting other claimed errors. Additionally, Defendant filed a sentencing memorandum asking for a conditional discharge "based upon his background and history of good deeds, the non-violent nature of the crimes, and his desire to better the community."

{6}    Likewise, in advance of sentencing, the State filed a memorandum recommending sentencing. The State argued that four and one-half years of incarceration was justified, but that "in any case, . . . some period of incarceration—perhaps in the [c]ounty jail—with work release for community service (and potentially to attend certain family obligations) is needed[.]" The State further recommended that "Defendant be required to provide at least 1,000 hours of supervised community service" and that he be ordered to pay restitution and a fine. The State also responded to Defendant's objections to the pre-sentence report, refuting Defendant's accusations that the report was, in the State's words, "unfairly prejudicial to Defendant."

**Sentencing**

{7}     The court held a sentencing hearing, at which Defendant and the State presented witnesses supporting their sentencing requests, and Defendant addressed the court. Among other arguments aimed at persuading the court to grant a conditional discharge, Defendant's counsel pointed to the fact that Steve Lewis, to whom Defendant sold the elk at issue in this case, received a conditional discharge. In concluding the hearing, the court announced its sentence, and provided, in part, the following explanation:

> I recognize that there is an unfairness in the way Mr. Lewis was treated in this fact pattern and as to how you were treated in this fact pattern regarding the elks. He received a conditional discharge as part of a negotiated agreement. I recognize that at the time he received that, most likely, the district attorney and law enforcement officers didn't know the extent of his involvement. They chose who they would enter into that agreement with and certainly today, Mr. Blackburn [(Defendant's counsel)] has brought it up how inequitable that is. . . . Mr. Blackburn indicated an awareness that it's very difficult to get a conditional discharge. They're rare, they're very rare. And my yardstick in applying conditional discharges is [that] I make defendants earn them. So today you don't get a conditional discharge. I don't know if down the path you come up with a package that does that, but it's an earned approach. So today it is not a conditional discharge.

{8}     The court imposed a sentence totaling four and one-half years in custody of the Department of Corrections, which reflected a three-year sentence for receiving stolen property, an eighteen-month sentence for the transportation of stolen livestock, and a 364-day concurrent sentence for failure to submit an invoice for the sale of game. The court suspended the sentence of imprisonment on the condition that Defendant

5

be placed on supervised probation for four and one-half years, ordered Defendant to "pay any and all restitution, initially to be determined by Adult Probation and Parole [Department] subject to the terms of" the plea agreement, and ordered Defendant to pay a fine to the New Mexico Department of Game and Fish totaling $10,000. Additionally, among other aspects of Defendant's sentence was an order to "complete twenty-five weeks or 1,000 hours a year of supervised community service for a total of 4,500 hours for the four and one-half . . . years of his supervised probation." The community service was to be "done in accordance with recommendations of the New Mexico Game and Fish Department in consultation with the Colorado Division of Wildlife."

{9}     Defendant makes two overarching claims of error related to his sentence. First, he claims that the sentence violated due process, raising several subpoints supporting that claim. Second, he argues that his sentence constituted cruel and unusual punishment. He also requests that his case be remanded to a district court judge different from the one who imposed his sentence. We examine each argument in turn.

**1.     Due Process**

{10}     The court's sentencing discretion is subject to the requirements of due process. *State v. Montoya*, 1978-NMCA-009, ¶ 7, 91 N.M. 425, 575 P.2d 609. Due process requires that a defendant be given notice and a meaningful opportunity to be heard.

*State v. Wildgrube*, 2003-NMCA-108, ¶¶ 39, 41, 134 N.M. 262, 75 P.3d 862 (discussing due process consideration in the context of a sentencing hearing). A defendant's sentence will not be overturned for a claimed due process violation unless the defendant demonstrates that he or she was prejudiced by the procedure employed by the sentencing court. *State v. Gardner*, 2003-NMCA-107, ¶ 42, 134 N.M. 294, 76 P.3d 47.

**A.    Conditional Discharge**

{11}    Pursuant to NMSA 1978, Section 31-20-13(A) (1994), "[w]hen a person who has not been previously convicted of a felony offense is found guilty of a crime for which a deferred or suspended sentence is authorized, the court may, without entering an adjudication of guilt, enter a conditional discharge order and place the person on probation[.]" *See State v. Fairbanks*, 2004-NMCA-005, ¶ 10, 134 N.M. 783, 82 P.3d 954 (stating that "the successful completion of probation under the terms of a conditional discharge results in the eradication of the guilty plea or verdict and there is no conviction"). Defendant acknowledges that he was not "entitled" to a conditional discharge, and he further acknowledges that the decision whether to grant a conditional discharge is a matter solely within the district court's discretion. Nevertheless, Defendant argues that the district court abused its discretion and

violated his right to due process by misconstruing Section 31-20-13(A) and failing to grant a conditional discharge at the time of sentencing.

**{12}** Defendant bases his argument on the court's statements—that a conditional discharge is "earned" and that it might be earned "down the path"—reflect the court's misunderstanding of the law applicable to the conditional discharge because Rule 5-801(B) NMRA does not permit the court to modify a suspended sentence by replacing it with a conditional discharge. *See id.* (stating, in part, that "[a] motion to reduce a sentence may be filed within ninety . . . days after the sentence is imposed, or within ninety . . . days after entry of any order or judgment of the appellate court denying review of, or having the effect of upholding, a judgment of conviction").

**{13}** Defendant further argues that the "only reasonable interpretation of the trial court's language is that the [court believed] . . . that a conditional discharge must be earned by actions of the individual *after* sentencing[,]" but could not be ordered at the time of sentencing. And he argues that any district court decision made in reliance on a misunderstanding of the law constitutes an abuse of discretion which warrants reversal and remand. *See State v. Gutierrez*, 2011-NMCA-088, ¶ 17, 150 N.M. 505, 263 P.3d 282 ("Abuse of discretion occurs when a district court exercises its discretion based on a misunderstanding of the law."). Defendant's argument does not demonstrate a basis for reversal.

{14} For purposes of this Opinion, we need not resolve whether Rule 5-801(B) permits the district court, after entering its judgment and sentence, to modify a suspended sentence to reflect a conditional discharge. Assuming, without deciding, that Defendant is correct in arguing that the court may not replace Defendant's suspended sentence with a conditional discharge, any possible misunderstanding in that regard is irrelevant in determining whether the court erred in denying Defendant's request for a conditional discharge at the time of sentencing. The pertinent question on appeal is whether, as Defendant asserts, the court's comments demonstrate that it was unaware of its authority to grant a conditional discharge at the time of sentencing and was operating under the mistaken belief that conditional discharges may only be granted later, having been "earned" after sentencing.

{15} As an initial matter, we note the general rule that this Court will not reverse a district court's ruling on the basis of its verbal comments. *See State v. Duarte*, 1996-NMCA-038, ¶ 20, 121 N.M. 553, 915 P.2d 309 (noting that "verbal comments of [a] trial judge may not be used as [a] basis for reversal"). We further observe that because the court's decision to deny Defendant's request for a conditional discharge was lawful, it does not constitute an abuse of discretion. *See State v. Cumpton*, 2000-NMCA-033, ¶ 10, 129 N.M. 47, 1 P.3d 429 (stating that "while sentences may be reviewed for abuse of discretion, there is no abuse of discretion if the sentence

9

imposed is authorized by law"). Nevertheless, even were we to consider the court's comments and its denial of a conditional discharge a proper basis for reversal, we do not believe that the court's comments in this case reflect an inherent misapprehension of its authority to grant a conditional discharge at the time of sentencing, pursuant to Section 31-20-13(A).

{16} Any concern that Defendant had regarding the court's ignorance of its discretion pursuant Section 31-20-13(A) was addressed by Defendant's sentencing memorandum, in which he briefed the court on that statute in advance of sentencing. We presume that the court read Defendant's sentencing memorandum, and Defendant does not make any argument to the contrary. Thus, in light of Defendant's written memorandum addressing Section 31-20-13, we will not assume that the court failed to comprehend its discretionary authority pursuant to that statute.

{17} Further, we observe that the court's comments were issued after a lengthy sentencing hearing, at which the State and Defendant collectively presented approximately five hours of witness testimony supporting their respective sentencing requests. The court's comments, particularly that "defendants earn" conditional discharges and that "today you don't get a conditional discharge" implicitly reflect its opinion that the mitigating information presented by Defendant was insufficient to evoke the court's leniency to a degree that the court would exercise its discretion to

order a conditional discharge. In sum, the court's decision to deny Defendant's request for a conditional discharge provides no basis for reversal on abuse of discretion grounds. *See Duarte*, 1996-NMCA-038, ¶ 20 (recognizing that "there is a presumption of regularity and rectitude in the proceedings below").

**{18}** Nor are we persuaded that the court's decision to deny Defendant's request for a conditional discharge constituted a due process violation. Defendant does not argue, nor on this record could he reasonably make the argument, that he was deprived notice or an opportunity to be heard on the issue of a conditional discharge. *See Wildgrube*, 2003-NMCA-108, ¶¶ 39, 41 (stating the requirements of due process in terms of sentencing). As such, we see no basis on which Defendant can reasonably assert a violation of due process.

**B.     The Fine**

**{19}** Defendant further argues that his right to due process was violated by the court's erroneous imposition of a $10,000 fine payable to the New Mexico Department of Game and Fish. He argues that the court had no authority to order the fine payable to that agency because the New Mexico Constitution requires that all fees collected by the judiciary be paid into the state treasury. And he argues that the court, having suspended his sentence, had no authority to order him to pay any fine.

11

**{20}** The State concedes, and we agree, that the court was not authorized to order Defendant's fine payable to the New Mexico Department of Game and Fish. *See* N.M. Const. art. VI, § 30 ("All fees collected by the judicial department shall be paid into the state treasury[.]"); *cf. State v. Dominguez*, 1993-NMCA-042, ¶¶ 45-46, 48, 51, 115 N.M. 445, 853 P.2d 147 (holding that the court's order requiring the defendant to donate money to a local law enforcement agency as a condition of his probation was essentially a "fine" and was unauthorized by law). Accordingly, we reverse, as void, the court's order requiring Defendant to pay $10,000 to the New Mexico Department of Game and Fish. The State argues, however, that because a $10,000 fine was a condition of the plea agreement, Defendant should be ordered, on remand, to pay the fine into the state treasury.

**{21}** By signing the plea agreement, Defendant agreed to pay a $10,000 fine as part of the sentence. And, as evidenced by its judgment and sentence, the district court believed that a $10,000 fine was appropriately included in the sentence. Thus, regardless of the erroneous designation of the fine's recipient in the plea agreement and in the judgment, the fact remains that the prosecution, Defendant, and the court all agreed that as a consequence of Defendant's crimes and as part of his negotiated plea agreement he should pay a $10,000 fine. As such, it would be improper to permit Defendant to avoid this agreed-upon condition of his sentence by voiding the fine and

prohibiting the court from correcting the erroneous designation and re-ordering the fine. *See Dominguez*, 1993-NMCA-042, ¶ 50 (noting that a "plea agreement stands or falls as a unit" and the "defendant may not be relieved of part of [the] plea bargain without giving up the benefits he received in the bargain"). Therefore, on remand, the court may impose a fine not to exceed $10,000 payable to the state treasury. *Cf. id.* ¶¶ 50-51 (voiding the district court's imposition of an illegal fine, but permitting the district court on remand to re-order a legally authorized fine of the same amount).

{22} Defendant's reliance on *State v. Aragon*, 1979-NMCA-074, 93 N.M. 132, 597 P.2d 317, and *State v. Holland*, 1978-NMCA-008, 91 N.M. 386, 574 P.2d 605, for the proposition that the court lacked authority to impose a fine accompanying a suspended sentence, is unavailing and is also misplaced. In *Aragon* and *Holland*, this Court recognized that "[a] fine is a sentence." *Aragon*, 1979-NMCA-074, ¶ 4; *Holland*, 1978-NMCA-008, ¶ 3. As such, in *Aragon*, this Court held that the district court could not simultaneously defer a sentence and issue a fine, which is a sentence, because to defer a sentence is to not impose a sentence. *See* 1979-NMCA-074, ¶ 4; *State v. Kenneman*, 1982-NMCA-145, ¶ 8, 98 N.M. 794, 653 P.2d 170. Similarly, in *Holland*, this Court held that a defendant whose plea bargain reflected an agreement to defer his sentence could not be ordered to pay a fine. *See* 1978-NMCA-008, ¶ 3 (explaining that because a fine is a sentence and the sentence was to be deferred, the

defendant's fine must be deferred). In this case, Defendant's sentence was not deferred, and his plea bargain reflected an agreement to pay a $10,000 fine as part of the agreed-upon sentence. Neither *Aragon* nor *Holland* apply here.

**{23}** "A trial court has broad discretion to suspend . . . all or any part of a noncapital sentence." *State v. Mares*, 1994-NMSC-123, ¶ 10, 119 N.M. 48, 888 P.2d 930; *see* NMSA 1978, § 31-20-3(B) (1985). In this case, the court's judgment and sentence suspended the four and one-half-year term of imprisonment to which Defendant was sentenced. The court did not suspend any other aspect of Defendant's sentence, including the $10,000 fine, the payment of which constituted a separate aspect of the sentence from the suspended term of imprisonment. Because the court had discretion to suspend "all or any part" of Defendant's sentence, the court did not err in suspending the term of imprisonment, yet imposing the fine. Section 31-20-3(B). As such, as stated earlier, the district court may on remand re-order Defendant to pay a fine up to $10,000 in accord with his plea agreement.

**C. Validity of the Sentence**

**{24}** Defendant argues that his sentence, presumably in its entirety, was invalid because it was based in part on inaccurate information. The sources of the purported inaccuracy were, according to Defendant, the State's "false assurance" that Defendant could complete his community service hours through an educational program

14

developed by the Department of Game and Fish and the court's reliance on the "faulty pre-sentence report." Defendant's argument in this regard provides no basis for reversal.

{25} "[A] defendant has a right to be sentenced on the basis of accurate information." *State v. Lack*, 1982-NMCA-111, ¶ 26, 98 N.M. 500, 650 P.2d 22. As such, to comport with due process, a defendant may be entitled to advance notice of the information that may affect the sentencing court's sentencing determination. *Gardner*, 2003-NMCA-107, ¶ 43. This includes the right to review and the opportunity to challenge the accuracy of information that is contained in a pre-sentence report. *See id.* Provided that the defendant is afforded an opportunity to refute, correct, or explain the information contained in a pre-sentence report, a violation of due process will not be found. *See Lack*, 1982-NMCA-111, ¶¶ 27, 31 (holding that the defendant's due process rights were met where he was afforded an opportunity to challenge information that was contained in a pre-sentence report); *Montoya*, 1978-NMCA-009, ¶¶ 4, 8, 14 (holding that the defendant's due process rights were not violated by a pre-sentence report that included arrests without convictions because the defendant had an opportunity to be heard on the accuracy of the information).

{26} Defendant, having had an opportunity to review the pre-sentence report, exercised his right to be heard in regard to the purported inaccuracies contained

15

therein by filing what he characterizes as "a very lengthy pleading outlining objections to the misleading, inaccurate[,] and false information contained within the report." Defendant, having reviewed the pre-sentence report and having been afforded an opportunity to object to and refute the information contained therein, was not deprived of due process as a result of the alleged inaccuracies contained in the pre-sentence report.

{27} Defendant further argues that his due process right was violated because, in issuing the sentence, the court "considered" a "false assurance" by the State that an educational program developed by the Department of Game and Fish, in Defendant's words, "could and would be instituted" through which Defendant could serve his community service hours. Although we question Defendant's representation of the record in this regard, nevertheless, because he fails to argue or demonstrate how he was prejudiced by the court allegedly having "considered" what Defendant believes to have been a "false assurance," his due process argument provides no basis for reversal. *See Gardner*, 2003-NMCA-107, ¶ 42.

**D.    Restitution**

{28} Defendant's final due process-related claim is that his sentence was invalid because the restitution order was improper. The State concedes two errors in regard to restitution in this case. First, contrary to the plea agreement, restitution may only

16

be ordered for the crimes to which Defendant pleaded guilty. Second, contrary to the district court's order, restitution must be determined by the court; the amount of restitution may not be left to the discretion of the Adult Probation and Parole Department.

**{29}** When a sentence is deferred or suspended, an order of restitution is mandatory. *State v. Ennis*, 1982-NMCA-157, ¶ 21, 99 N.M. 117, 654 P.2d 570; *see* NMSA 1978, § 31-17-1(B) (2005). Restitution may only be ordered for those offenses for which a defendant has been convicted. *State v. Ellis*, 1995-NMCA-124, ¶ 10, 120 N.M. 709, 905 P.2d 747. And "[t]he amount of restitution and time of payment must be set by the court and may not be left to the discretion of probation authorities." *Lack*, 1982-NMCA-111 ¶ 19.

**{30}** In this case, the district court failed to set the amount of restitution and the time of payment, leaving those details subject to the discretion of the Adult Probation and Parole Department. The court ordered that the amount of restitution was to be "subject to the terms of" the plea agreement, presumably including the plea agreement's condition that Defendant could be ordered to pay restitution on charges that had been dismissed or not filed. Because the court, and not probation authorities, must set the amount of restitution, and because Defendant may only be ordered to pay restitution for the crimes to which he pleaded guilty, the court's order to the contrary

17

was erroneous. *See Ellis*, 1995-NMCA-124, ¶ 10; *Lack*, 1982-NMCA-111 ¶ 19. Thus, owing to the court's failure to order a specific sum of restitution related only to the crimes of which Defendant was adjudicated guilty, we reverse the court's restitution order and remand for entry of a restitution order that complies with the dictates of Section 31-17-1 and relates only to the crimes of which Defendant was adjudged guilty.

**2.      Cruel and Usual Punishment**

**{31}**      Defendant argues that his sentence, presumably in its entirety, constituted cruel and unusual punishment, and as such, his sentence must be vacated. *See State v. Castillo*, 2011-NMCA-046, ¶ 28, 149 N.M. 536, 252 P.3d 760 (recognizing that the federal and state constitutions prohibit the imposition of cruel and unusual punishment). "When the length of a sentence is disproportionate to the crime that [was] charged, it may constitute cruel and unusual punishment." *Id*. ¶ 31. Yet "in almost all cases[,] a statutorily lawful sentence does not constitute cruel and unusual punishment." *Id*. (internal quotation marks and citation omitted).

**{32}**      Establishing criminal penalties is the purview of the Legislature. *See State v. Rueda*, 1999-NMCA-033, ¶ 6, 126 N.M. 738, 975 P.2d 351 ("[T]he Legislature has the prerogative to establish the length of a criminal sentence."). And the designation of criminal penalties reflects the Legislature's view of the seriousness of the harm

associated with particular crimes. *Cf. State v. Trujillo*, 2012-NMCA-112, ¶ 30, 289 P.3d 238 (stating that the penalties associated with kidnaping indicate that the Legislature considers it to be "a serious crime that requires severe consequences"). In the absence of a compelling reason to do so, courts will not impose their own view in place of the Legislature's regarding the appropriate punishment for crimes. *Rueda*, 1999-NMCA-033, ¶ 6. Accordingly, "successful challenges to the proportionality of particular sentences are . . . exceedingly rare." *Id*. ¶ 14 (internal quotation marks and citation omitted).

{33}     Defendant presents an exhaustive list of assertions that, in his view, demonstrate the cruel and unusual nature of his sentence and should "shock the conscience" of the Court. He complains, among other things, that he has been rendered unemployable and "penniless," that the community service requirement of his sentence is "oppressive," that it has "forced him into servitude" by requiring him to work without pay, that his sentence was disproportionate to his crimes because they were mere "game and fish violations," and as such they lacked the "societal severity of many felony offenses" such as "violent offenses" and "drug offenses." Defendant's argument, that his criminal sentence constitutes cruel and unusual punishment for what he views as minor or less severe crimes, is unpersuasive.

**{34}** First, we reject Defendant's attempt to minimize the nature of his crimes as mere "game and fish violations." Underlying the charges to which Defendant pleaded guilty were facts showing that Defendant sold and possessed property stolen from New Mexico and Colorado. Second, by entering into a plea agreement with the State, he avoided potential criminal liability for a number of additional crimes, and agreed to be subject to the consequences associated with each crime to which he pleaded guilty. Further, the court's decision to suspend the four and one-half year term of imprisonment to which Defendant was sentenced and, instead to impose community service, was an act of clemency. *See State v. Donaldson*, 1983-NMCA-064, ¶ 32, 100 N.M. 111, 666 P.2d 1258 ("Probation is an act of clemency resting in the sound discretion of the trial court.").

**{35}** "Probation is not meant to be painless[,]" *id.*, but whatever inconvenience, hardship, or burden Defendant claims to be suffering as a result of his sentence must be viewed in light of the fact that it was in lieu of a lengthy prison term. Viewed in that light, Defendant has provided no persuasive basis to support a holding that his sentence was cruel and unusual.

**{36}** Additionally, Defendant argues that owing to his age (Defendant was sixty-six years of age when he was indicted in 2006), a heart problem and "other medical conditions," his "health[] and even his life[] is endangered by the requirement to

continue an unimaginable amount of community service[.]" He relies on *State v. Arrington*, 1993-NMCA-055, 115 N.M. 559, 855 P.2d 133, for the proposition that his age and health concerns, alone, are sufficient to demonstrate that his sentence was cruel and unusual. We disagree. *Arrington* is not persuasive authority in the context of this case.

{37} In *Arrington*, the defendant presented "evidence [that] was uncontroverted that incarceration would be life-threatening" leading this Court to affirm the district court's decision not to sentence the defendant to a statutorily mandated prison term. *Id.* ¶¶ 1, 11-14. Here, Defendant's age and health-concerns arguments are not supported by uncontroverted evidence; rather, it is based exclusively on the assertions of Defendant's counsel. *See State v. Cochran*, 1991-NMCA-051, ¶ 8, 112 N.M. 190, 812 P.2d 1338 ("Argument of counsel is not evidence."). Further, the record reflects that the district court took Defendant's age, health, and other mitigating factors into consideration in determining Defendant's sentence. In sum, we conclude that Defendant's sentence was not cruel or unusual. His arguments to the contrary provide no basis for reversal.

**3. Remand Request**

{38} Based on his assertion that his sentence was unfair and unconstitutional, Defendant requests that, on remand, we order assignment of his case to a judge

21

different from the sentencing judge so as to avoid the "appearance of impropriety." Because we do not believe that Defendant's sentence was unfair or unconstitutional, we see no reason to prohibit the sentencing judge from correcting the errors reflected in the court's judgment and sentence. *Contra State v. Bonilla*, 2000-NMSC-037, ¶¶ 8, 15, 130 N.M. 1, 15 P.3d 491 (ordering the defendant's case to be remanded to a judge different from the sentencing judge who had effectively chilled the defendant's constitutional right to a jury trial by indicating that a "persistent or prior offender" who went to trial rather than accepting a plea was likely to get "a max-type sentence"). Accordingly, we decline Defendant's request of remand to a judge different from the judge who ordered his sentence.

**CONCLUSION**

{39} We reverse the court's judgment and sentence as it pertains to the payment of the fine and restitution. On remand, the court may order a fine paid to the state treasury up to $10,000, and the court shall order restitution in a manner that comports with the law. The court's order of judgment and sentence is affirmed in all other respects.

{40} **IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

22

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**


_____
**MICHAEL E. VIGIL, Judge**