This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                              **No. A-1-CA-34276**

**JOSE VARGAS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Jerry H. Ritter, Jr., District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Judge.**

**{1}** Defendant Jose Vargas seeks to reverse his convictions following a jury trial for one count of aggravated assault against a household member, pursuant to NMSA 1978, Section 30-3-13(A) (1995), one count of false imprisonment, pursuant to NMSA 1978, Section 30-4-3 (1963), and one count of battery against a household member, pursuant to NMSA 1978, Section 30-3-15 (2008). Unpersuaded by Defendant's arguments, we affirm. Because this is a memorandum opinion and the parties are familiar with the facts and procedural posture of the case, we set forth only such facts and law as are necessary to decide the merits.

**BACKGROUND**

**{2}** Defendant's convictions stem from a domestic dispute that occurred between Defendant and Olga Saucedo (Victim) on Thanksgiving Day, November 22, 2012. Witnesses at Defendant's trial were Victim's neighbors, Joe Ochoa (Mr. Ochoa) and his wife, Cheryl Polizzi (Ms. Polizzi), as well as Alamogordo, New Mexico Police Officers, Troy Thompson (Officer Thompson) and Mark Esquero (Officer Esquero).

**{3}** The following evidence was presented to the jury. Victim and Defendant had been in a relationship for two years before their Thanksgiving Day 2012 dispute. On the morning of Thanksgiving Day 2012, Defendant and Victim were drinking and arguing in Victim's trailer. Around 9:00 a.m., Victim went to Mr. Ochoa and Ms. Polizzi's trailer in her bathrobe "confused" and "not herself," but only told Mr. Ochoa

and Ms. Polizzi "Happy Thanksgiving." Victim left soon after, but later that day returned to Mr. Ochoa and Ms. Polizzi's home and banged on the trailer, saying "Help me! Help me!" and "He wants to kill me!" Mr. Ochoa called the police.

{4}    Officer Thompson responded to the call, but did not detect any signs of criminal conduct. Officer Thompson therefore concluded his investigation after Victim informed him that Defendant would be leaving and that everything would be okay.

{5}    Later that same day, Mr. Ochoa testified to observing Victim's hand trying to open her trailer door and then seeing the door slamming shut. Victim was screaming "help me," "leave me alone," and "stop hitting me," and Defendant could be heard yelling back at her. Victim and Defendant then came out of Victim's trailer and both were holding knives. Mr. Ochoa described this situation as a "fight[]" between Victim and Defendant "with knives[.]" Ms. Polizzi described seeing Victim backing away from her trailer and from Defendant with a knife in her hand as he pursued her with a knife in his hand.

{6}    Ms. Polizzi called the police a second time and stated that "the same people that I called about before, now they're outside and they've got weapons." While Ms. Polizzi called the police, Mr. Ochoa went to Victim's trailer to offer help. While at Victim's trailer, Mr. Ochoa managed to grab Victim and tell her to give him her knife. Mr. Ochoa then convinced Defendant to put his knife down. Ms. Polizzi then called

3

Victim to come into her yard where she observed injuries suffered by Victim including blood coming from her nose, bruises and red marks on her wrists, blood smears on both of her shoulders, a wet face from crying and her hair in disarray. Defendant left the scene before the police arrived.

{7} Officer Thompson responded to the second call with the information that there were two people armed with knives swinging them at each other. After investigating the scene of the altercation and being unable to locate Defendant, Officer Thompson left the trailer park and obtained a warrant for Defendant's arrest. Defendant was subsequently arrested on the warrant.

**DISCUSSION**

{8} Defendant raises five arguments on appeal: (1) that the district court erred in refusing to instruct the jury on self-defense by non-deadly force, *see* UJI 14-5181 NMRA; (2) that the jury instructions on the New Mexico "no-retreat" law, *see* UJI 14-5190 NMRA, and the definition of "household member," *see* UJI 14-332 NMRA, as well as statements made by the prosecutor during closing argument constituted fundamental errors that collectively amounted to cumulative error; (3) that Officer Thompson's testimony repeating Victim's out-of-court statements concerning who had hit her and where that individual was violated the Confrontation Clause; (4) that admission of Officer Esquero's testimony describing the arrest of Defendant

4

constituted plain error; and (5) that sufficient evidence does not support Defendant's convictions. We address these issues in turn.

**I.     The District Court Did Not Err in Refusing to Instruct the Jury on Self-Defense by Non-Deadly Force**

{9}     Defendant tendered a non-deadly force self-defense instruction modeled after UJI 14-5181. The State objected, arguing that based on Victim and Defendant's use of knives in the confrontation, any self-defense instruction submitted to the jury should include the use of deadly force. The district court ruled that a self-defense instruction was warranted because both Victim and Defendant had knives and used them in a way that the jury could infer that Defendant could have perceived Victim as a threat and used his knife for self-defense. The district court also determined that self-defense by deadly force, pursuant to UJI 14-5183 NMRA, was the proper self-defense instruction because the use of the knives as described by the witness constituted the use of deadly force. The instruction given to the jury stated:

> Evidence has been presented that [D]efendant acted in self-defense. [D]efendant . . . acted in self-defense if: 1. There was an appearance of immediate danger of death or great bodily harm to [D]efendant as a result of [Victim] arming herself and swinging a knife at [D]efendant; 2. [D]efendant was in fact put in fear of immediate death or great bodily harm and was swinging a knife because of that fear, and 3. The apparent danger would have caused a reasonable person in the same circumstances to act as [D]efendant did. The burden is on the State to prove beyond a reasonable doubt that [D]efendant did not act in self-defense. If you have a reasonable doubt as to whether [D]efendant acted in self-defense, you must find [D]efendant not guilty.

5

{**10**}    We review a trial court's rejection of proposed jury instructions de novo. *See State v. Percival*, 2017-NMCA-042, ¶ 8, 394 P.3d 979. "A defendant is only entitled to jury instructions on a self-defense theory if there is evidence presented to support every element of that theory." *State v. Baroz*, 2017-NMSC-030, ¶ 14, 404 P.3d 769. "Where there is enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense such that reasonable minds could differ, the instruction should be given." *Id.* ¶ 15 (alterations, omission, internal quotation marks, and citation omitted).

{**11**}    Defendant argues that the district court erred in refusing to instruct the jury on self-defense by non-deadly force. Defendant submits that while "[i]t was undisputed that [he] and [Victim] both had knives during their confrontation, . . . there was no evidence that [he] attempted to use his knife" on Victim. As a result, Defendant contends that his threatening conduct involving the display of a knife, without more, constituted only the use of non-deadly force. In support of this contention, Defendant cites *State v. Clisham*, 614 A.2d 1297 (Me. 1992) and *People v. Pace*, 302 N.W.2d 216 (Mich. Ct. App. 1980). In *Clisham*, upon receiving information that the defendant had killed his wife, police officers attempted to search the home of the defendant without obtaining a warrant. 614 A.2d at 1297. When the defendant refused to allow

6

the officers to enter his home, the officers told the suspect that if he did not permit them to enter that they would break his door down. *Id.* at 1298. As a result, the defendant armed himself with two knives, opened the door, and explained to the officers that he would use the knives to prevent them from coming into his home. *Id.* The defendant eventually relented and permitted the officers to enter his home—at which time he was arrested and charged with "criminal threatening." *Id.* The Supreme Judicial Court of Maine determined that the facts indicated that by brandishing knives to repel the police from entering his home, the defendant had only "threatened the use of deadly force. [And t]he mere threat of the use of deadly force is tantamount to the actual use of non-deadly force. It is not on a par with the actual use of deadly force." *Id.* Accordingly, the court held that it was an error for the trial court to equate "the mere threat of deadly force with the actual use of deadly force." *Id.* at 1299.

{12}     Similarly in *Pace*, there was a confrontation between the defendant and victim over a transaction involving a set of speakers that the defendant's wife had purchased from the victim. 302 N.W.2d at 217. During the confrontation, it was alleged that the victim jumped in the face of the defendant. *Id.* at 217-18. The defendant responded by pulling out a knife that he claimed to have used to defend himself when the victim came toward him with what appeared to be a small baseball bat. *Id.* At his trial for assault using a dangerous weapon, the trial court gave the jury a self-defense using

7

deadly force instruction over defense counsel's objection. *Id.* at 221. Reasoning that the evidence did not show that the defendant stabbed, lunged, or swung at anybody with the blade of his knife, but rather merely drew the knife and held it at his side, the Michigan Court of Appeals determined that the defendant did not use deadly force during the confrontation. *Id.* Accordingly, the court held that it was error for the trial court to have instructed the jury on self-defense using deadly force. *Id.*

{13}    *Clisham* and *Pace* are unpersuasive here. In *Clisham* and *Pace*, the defendants used their knives in defensive postures—to repel an unlawful home entry by the police in the first instance and to self-protect against an attack with a baseball bat by the victim in the other—with no indication that the defendants stabbed, lunged, or swung at anybody with the blade of their knives. In contrast, here the testimony of Mr. Ochoa and Ms. Polizzi established that Victim and Defendant used their knives offensively and in a manner consistent with the use of deadly force. Mr. Ochoa testified that he witnessed Victim and Defendant "fighting" and "swinging" knives at each other in front of Victim's trailer. Additionally, Ms. Polizzi described seeing Victim backing away from her trailer and from Defendant with a knife in her hand as he pursued her with a knife in his hand.  Based on these facts, we conclude that there were facts to support each element of self-defense by using deadly force. As the district court observed, Victim and Defendant had knives and used them in a way that one could

infer that Defendant could have reasonably perceived Victim as a threat and used his knife for self-defense. Accordingly, we conclude that the district court properly instructed the jury on a theory of self-defense by using deadly force and did not err in rejecting Defendant's tendered theory of self-defense by using non-deadly force.

**II.    Neither Fundamental nor Cumulative Error Occurred at Defendant's Trial as a Result of Either the Jury Instructions or the Prosecutor's Closing Argument**

{14}    Defendant argues that "the jury instructions on no duty to retreat, the definition of a household member, and the prosecutor's closing argument gave rise to fundamental error[s]" at his trial. Moreover, Defendant contends, these errors taken together also constituted a cumulative error.

**A.    The Instructions Given to the Jury on the New Mexico No-Retreat Law and the Definition of a "Household Member" Did Not Give Rise to Fundamental Errors**

{15}    The State tendered and received a "no-retreat" instruction, which was a modified version of UJI 14-5190. The tendered instruction provided that "[a] person who is threatened with an attack need not retreat. In the exercise of her right of self defense, she may stand her ground and defend herself." The State explained that it requested this instruction to inform the jury that upon being attacked, Victim had the right to defend herself at her own home. Defendant neither objected to the State's

9

tendered version of UJI 14-5190 nor requested that a no-retreat instruction be given to apply to him.

{16} The State also tendered and received an instruction defining the term "household member" pursuant to UJI 14-332. The instruction provided that "a 'household member' means a spouse, former spouse, family member, including a relative, parent, present or former step-parent, present or former in-law, child or co-parent of a child, or a person with whom the threatened [Victim] has had a continuing personal relationship. Cohabitation is not necessary for [Victim] to be considered a household member." Defendant did not object to the instruction.

{17} Because Defendant failed to object to the State's no-retreat instruction and instruction defining "household member," we review his challenges only for fundamental error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 ("The standard of review [appellate courts] apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved [appellate courts] review the instructions for reversible error. If not, we review for fundamental error." (citation omitted)). "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. "An error is fundamental when it goes to the foundation or basis of a defendant's rights." *State v.*

*Anderson*, 2016-NMCA-007, ¶ 8, 364 P.3d 306 (internal quotation marks and citation omitted). This Court "will not uphold a conviction if an error implicated a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Id.* (internal quotation marks and citation omittted).

{18}    In cases involving instructional errors, the appellate courts seek to determine "whether a reasonable juror would have been confused or misdirected by the jury instruction." *Benally*, 2001-NMSC-033, ¶ 12 (internal quotation marks and citation omitted). "For fundamental error to exist, the instruction given must differ materially from the uniform jury instruction, omit essential elements, or be so confusing and incomprehensible that a court cannot be certain that the jury found the essential elements under the facts of the case." *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775 (internal quotation marks and citations omitted). Whether a particular jury instruction was properly given "is a mixed question of law and fact" that the appellate courts review de novo. *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167 (internal quotation marks and citation omitted).

**1.    The Jury Instruction on the New Mexico No-Retreat Law Was Not a Fundamental Error**

{19}    Relying on *Anderson*, Defendant argues that the district court erred in giving the jury the State's tendered no-retreat instruction, which included only female pronouns. This modified instruction, Defendant submits, "likely misdirected the jury"

11

especially in light of the fact that female pronouns are "marked" terms in the English language such that "a reasonable juror likely would have concluded that because only feminine pronouns were used" that Defendant "did have a duty to retreat" under the circumstances. Defendant therefore posits that the State's no-retreat instruction "would have permitted the jury to reject self-defense out of hand without even considering whether [Defendant] acted reasonably."

{20} In *Anderson*, the defendant and victim got into a fight at a house party. 2016-NMCA-007, ¶ 3. After a squabble and believing that the victim had armed himself with a firearm, the defendant drew a handgun and shot the victim multiple times, killing him. *Id.* At his homicide trial, the defendant requested a self-defense and no-retreat instruction pursuant to UJI 14-5190, which the district court agreed was warranted by the facts. *Anderson*, 2016-NMCA-007, ¶ 5. However, as a result of an "oversight," the no-retreat instruction was not given to the jury. *Id.* ¶ 6. The defendant did not object to the omission of UJI 14-5190. *Anderson*, 2016-NMCA-007, ¶ 8. During deliberations, the jury submitted a question to the district court asking if there was a "stand-your-ground" law in New Mexico, but ultimately withdrew the question because it had "found what it was looking for." *Id.* ¶ 6 (alteration, internal quotation marks, and citation omitted). The defendant was thereafter convicted of second-degree murder. *Id.* On appeal, we determined that:

[T]he term "reasonable" in the third prong of [a] self-defense instruction carries a different meaning when read in conjunction with the no-retreat instruction than it does alone. Read alone, a person exercising the degree of attention, knowledge, intelligence, and judgment that society requires of its members is acting reasonably. When read together with the no-retreat instruction, however, a person who, when threatened with an attack, does not retreat and stands his ground when exercising his right of self-defense is acting reasonably.

*Id.* ¶ 15 (internal quotation marks and citation omitted). As a result, "[g]iven the difference between the reasonableness standard of a self-defense instruction alone and a self-defense instruction read in conjunction with the no-retreat instruction," we concluded that there was no way to determine which standard the defendant was held to by the jury. *Id.* ¶ 16. These circumstances, we held, established that the defendant's "conviction was tainted by fundamental error[.]" *Id.* ¶ 19.

{21}     We are unpersuaded by Defendant's reliance on *Anderson* as authority for the argument that it was fundamental error for the district court to give the jury the State's modified no-retreat instruction. In *Anderson*, the district court agreed with the defendant that a no-retreat instruction was warranted by the facts of the case, but because of an oversight failed to give the jury the tendered instruction. In contrast, here the jury received a no-retreat instruction. In *Anderson*, there was also a strong indication of jury confusion concerning whether the defendant acted in self-defense based on the omission of the no-retreat instruction. This confusion was evident by the jury's question to the district court concerning whether there was a "stand-your-

13

ground" law in New Mexico, which was later withdrawn on grounds that the jury had "found what it was looking for." *Id.* ¶ 6 (alteration, internal quotation marks, and citation omitted). In contrast, here although the second sentence of the State's modified no-retreat instruction only contained female gender pronouns, the jury was fully instructed on New Mexico's self-defense and no-retreat law, which did not materially differ from the applicable uniform jury instructions. And there is no indication in the record of jury confusion as to whom the given no-retreat instruction applied. As a result, because Defendant's argument relies on speculation that the jury may have believed that Defendant had a duty to retreat from the altercation between him and Victim, we perceive no fundamental error.

**2.      The Jury's Instruction on the Definition of a "Household Member" Was Not Fundamental Error**

{**22**}    Relying on *State v. Bonham*, 1998-NMCA-178, 126 N.M. 382, 970 P.2d 154, *abrogated by State v. Traeger*, 2001-NMSC-022, 130 N.M. 618, 29 P.3d 518, Defendant argues that the district court erred in permitting inclusion in its instruction on the definition of "household member," modeled after UJI 14-332, the language that Victim was "threatened." The word "threatened" in the definition of "household member," Defendant argues "infringed upon [his] right to a jury verdict on the element that was the gravamen of the aggravated assault charge." In other words,

14

Defendant states, the instruction constituted "a clear, direct, and gratuitous statement defining the alleged victim of the assault as having been 'threatened.'"

**{23}** In *Bonham*, this Court reversed the conviction of a defendant for aggravated battery on grounds of an erroneous jury instruction, applying a reversible error standard. 1998-NMCA-178, ¶ 28. There, we held that given the grammatical structure of the aggravated battery elements instruction given to the jury, that the instruction was facially erroneous and permitted the jury to convict the defendant without proof of all of the essential elements of the crime. *Id.* ¶¶ 26-28 (reasoning that an instruction providing "[t]he defendant did touch or apply force to [the victim], a household member, with a hot plate or trivet frame, an instrument or object which, when used as a weapon, could cause death or very serious injury" instructed the jury that these items met the definition of a "deadly weapon" without requiring the State to prove that fact (alteration and emphasis omitted)). *Bonham* was abrogated, however, by *Traeger*, 2001-NMSC-022, ¶¶ 19-20. In *Traeger*, our Supreme Court held that an aggravated battery elements instruction involving the use of a baseball bat did not warrant reversal of the defendant's conviction under a fundamental error analysis. *Id.* ¶¶ 19, 22 (stating that the instruction provided in pertinent part that the defendant "hit the victim with a baseball bat, an instrument or object which, when used as a weapon, could cause death or very serious injury" (alteration and internal quotation marks

15

omitted)). The Court stated that "[c]onsidering the heightened scrutiny of a fundamental error analysis, . . . jury instructions should be considered as a whole" and convictions should not be reversed where an alleged error is a "strictly legal and a highly technical objection." *Id.* ¶¶ 19-20 (alteration, internal quotation marks, and citation omitted). In concluding that reversal of the defendant's conviction was not warranted, the Court reasoned that as a whole, the instruction at issue contained an introductory phrase stating that "the state must prove to your satisfaction beyond a reasonable doubt each of the following elements." *Id.* ¶ 21 (internal quotation marks and citation omitted). This language, the Court concluded, instructed the jury that the question of whether a baseball bat was a "deadly weapon" was an element that the State was required to prove beyond a reasonable doubt. *Id.*

{24}     Even assuming it was an error to include the language that Victim was "threatened" in the jury instruction defining "household member," the error was not fundamental. The second element of the aggravated assault against a household member instruction given to the jury provided that "[D]efendant's conduct caused [Victim] to believe [D]efendant was about to intrude on [Victim]'s bodily integrity or personal safety by touching or applying force to [Victim] in a rude, insolent or angry manner[.]" Following *Traeger*, we conclude that whether characterization of the Victim as "threatened" in the instruction defining a household member permits the

16

jury to assume without proof beyond a reasonable doubt the second element of the aggravated assault instruction is at most "strictly legal and a highly technical objection" that does not implicate fundamental fairness or judicial integrity. *Id.* ¶ 19 (internal quotation marks omitted). Also, as in the case of the aggravated battery using a deadly weapon instruction in *Traeger*, because the aggravated assault against a household member instruction here directed that "the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime," a reasonable juror would have understood that the State was required to establish with sufficient evidence all of the elements of the crime. *Id.* ¶ 21 (internal quotation marks). Finally, the State's tendered instruction defining a "household member" contained no substantive or material modification from the applicable uniform instruction. *See* UJI 14-332 (providing that "[a] 'household member' means a spouse, former spouse, family member, including a relative, parent, present or former step-parent, present or former in-law, child or co-parent of a child, or a person with whom the threatened _____ (*name of victim*) has had a continuing personal relationship. Cohabitation is not necessary for _____ (*name of victim*) to be considered a household member"). Accordingly, the instruction defining a "household member" did not give rise to fundamental error.

**B.    Fundamental Error Due to Prosecutorial Misconduct Did Not Result From the State's Closing Argument**

{25}    At the conclusion of the State's closing argument, counsel commented that:

> The law is here. You just have to read it and apply it. Self-defense is objectionable to even hear about in this case, yet you have been instructed about it. Take those instructions on self-defense and tear them up—figuratively. They don't apply. There's no facts to sustain them. This law and that testimony and those photos is what will do justice in this case. Find the defendant exactly what he did in this case—guilty of all three counts.

Defendant did not object.

{26}    Defendant argues on appeal that "[t]he prosecutor committed misconduct when he told the jury 'figuratively' to rip up the court's self-defense instructions, and to rely instead on the other instructions in its deliberations." Defendant contends that this statement was a violation of law under settled New Mexico case law standing for the proposition that "[a] prosecutor may not urge the jury to disregard the defenses contained in the court's instructions." To support his argument, Defendant cites *State v. Garvin*, 2005-NMCA-107, 138 N.M. 164, 117 P.3d 970 and *State v. Diaz*, 1983-NMCA-091, 100 N.M. 210, 668 P.2d 326, as well as the out-of-state cases of *People v. Rosales*, 134 P.3d 429 (Colo. App. 2005) and *State v. Cardus*, 949 P.2d 1047 (Haw. Ct. App. 1997).

{27}    Because Defendant failed to object to the State's comment during closing argument, our review is limited to a fundamental error analysis. *See State v. Trujillo*,

18

2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814 ("When an issue [of alleged prosecutorial misconduct] has not been properly preserved by a timely objection at trial, [appellate courts] have discretion to review the claim on appeal for fundamental error."). "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial. An isolated, minor impropriety ordinarily is not sufficient to warrant reversal, because a fair trial is not necessarily a perfect one." *Id.* (internal quotation marks and citation omitted); *see State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348 ("Fundamental error occurs when prosecutorial misconduct in closing statements compromises a defendant's right to a fair trial[.]"). To determine whether a defendant was deprived of a fair trial, the appellate courts "review the [challenged] comment in context with the closing argument as a whole" in order to "gain a full understanding of the comments and their potential effect on the jury." *State v. Fry*, 2006-NMSC-001, ¶ 50, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted).

**{28}** The cases relied upon by Defendant share a commonality fatal to their application to this case—the prosecutor in each case made a misstatement of the law in its closing argument. *See Garvin*, 2005-NMCA-107, ¶¶ 19-20 (holding that "the prosecutor's comments were incorrect statements of the law" because they

19

communicated a lowered burden of proof "as to the essential element of the mens rea" for the crime of forgery with which the defendant was charged); *Diaz*, 1983-NMCA-091, ¶ 17 (holding that "[t]he prosecutor's comment that in order to establish the intoxication defense [to charges of burglary and larceny] the defendant would have to produce expert testimony does not correctly state the law"); *See also Rosales*, 134 P.3d at 436 (stating that "it was improper for the prosecution to argue that a verdict acquitting defendant of first degree murder would reward defendant for drinking and indicate that it is permissible for every intoxicated person to commit murder and not be held accountable," yet still holding the comment "does not constitute plain error affecting defendant's substantial rights" where there was ample evidence of defendant's guilt); *Cardus*, 946 P.2d at 1054, 1060 (holding that although the prosecutor misstated the law in closing argument, a curative instruction assured that the defendant was afforded a fair trial). Here, because the comment challenged by Defendant was not a statement of law, but rather a conclusion that the State argued that the jury should reach based on the evidence admitted at trial, *Garvin*, *Diaz*, *Rosales*, and *Cardus* do not apply.

{29}     Considered in the context of the closing argument as a whole, the State's comment—that the jury should view the evidence in support of the State's position and figuratively tear up the instruction on Defendant's self-defense theory of the

20

case—did not deprive Defendant of a fair trial. This erroneous suggestion was raised as an isolated comment by the State at the conclusion of its summarization of the evidence admitted at trial. Although such an improper comment is not appropriate and might rise to a level of reversible error if preserved below, nothing exists in the record to show that the jury failed to carry out its sworn duty to apply all the jury instructions given by the district court. *See State v. Clark*, 1989-NMSC-010, ¶ 78, 108 N.M. 288, 772 P.2d 322 (recognizing that "[t]here is a presumption that jurors will adhere to their instructions . . . and not pick out one instruction or parts of an instruction or instructions and disregard others" (internal quotation marks and citation omitted)). It is possible to infer that the State was only attempting to ask the jury to accept the State's view of the evidence, reject Defendant's self-defense theory, and then refuse to apply the self-defense instruction as support for a not guilty verdict. *See State v. Vigil*, 2010-NMSC-003, ¶ 4, 147 N.M. 537, 226 P.3d 636 (stating that our appellate courts "indulge all reasonable inferences in support of the verdict" (internal quotation marks and citation omitted)). In a fundamental error context, this Court would only be speculating to conclude that the State's comment about the self-defense instruction had an absolute effect on the jury that was so persuasively prejudicial that it deprived Defendant of a fair trial. *See In re Ernesto M*., 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 (stating that an "assertion of prejudice is not a showing of prejudice").

21

As a result, we conclude that Defendant failed to establish fundamental error in this case.

**C.      No Cumulative Error Occurred**

{30}      Considered together, Defendant argues, the foregoing alleged errors resulted in cumulative error because they "deprive[d Defendant] of a fair trial."

{31}      "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Carrillo*, 2017-NMSC-023, ¶ 53, 399 P.3d 367 (internal quotation marks and citation omitted). Cumulative error doctrine is "strictly applied, and cannot be invoked if the record as a whole demonstrates that the defendant received a fair trial." *State v. Maxwell*, 2016-NMCA-082, ¶ 32, 384 P.3d 116 (alterations, internal quotation marks, and citation omitted). Our examination of the record as a whole fails to demonstrate that Defendant did not receive a fair trial. We therefore reject Defendant's claim of cumulative error.

**III.     Officer Thompson's Testimony Did Not Violate Defendant's Rights Under the Confrontation Clause**

{32}      On direct examination, the State asked Officer Thompson if there was any on-the-scene questioning of Victim about Defendant's location when he responded to the second 911 call. Officer Thompson answered in the affirmative, testifying that he "asked who was the person that hit her [Victim]. She said [Defendant]. And then I

22

asked where he was. She [Victim] said she thinks he's possibly inside [her trailer]." Defense counsel objected on grounds of hearsay initially. At the ensuing bench conference, the State argued that Victim's statements were admissible as excited utterances and under the public safety exception to the Confrontation Clause. The district court overruled the objection, ruling that "the eliciting of information to find out where another potential combatant" was falls within the public safety exception to the Confrontation Clause, "so her answer to that and his [Officer Thompson's] response in reaction to that information is admissible." Officer Thompson later testified that his on-the-scene questions were asked based on his concern for public safety because the community surrounding Victim's trailer was home to multiple families and children who frequently played outside.

{33}     On cross-examination, defense counsel asked Officer Thompson where the knives found on the kitchen table in Victim's trailer had come from and how he knew those knives were actually the knives used by Victim and Defendant during their altercation. Officer Thompson responded that Victim had stated that she and Defendant had two knives and those were the knives found on the kitchen table in her trailer. No objection, motion to strike, or curative instruction for this testimony was requested by defense counsel.

{34} Defendant argues on appeal that the "[t]estimony by Officer Thompson regarding [Victim's] answer[s] to his question about who had hit her [and the location of that person] violated [Defendant's] right to confrontation." Additionally, Defendant argues, Officer Thompson's testimony repeating Victim's statements tying Defendant to the knives found in Victim's kitchen that were allegedly involved in the confrontation between Defendant and Victim also violated Defendant's right to confrontation. As a result, Defendant concludes, it was an error for the district court to admit these statements at his trial where no showing was made as to Victim's unavailability and Defendant had no opportunity to cross-examine Victim.

{35} "We apply a de novo standard of review as to the constitutional issues related to the defendant's rights under the Confrontation Clause." *State v. Gutierrez*, 2011-NMCA-088, ¶ 12, 150 N.M. 505, 263 P.3d 282 (alteration, internal quotation marks, and citation omitted). The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend VI. This procedural safeguard applies in both state and federal prosecutions. *See Crawford v. Washington*, 541 U.S. 36, 42 (2004). The Confrontation Clause bars admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* 53-54; *see*

24

*Gutierrez*, 2011-NMCA-088, ¶ 13. "Statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* ¶ 14 (alteration, emphasis, internal quotation marks, and citation omitted). In contrast, "statements are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* (emphasis, internal quotation marks, and citation omitted). The level "of formality of the interrogation is a key factor in determining whether statements are testimonial." *State v. Romero*, 2007-NMSC-013, ¶ 21, 141 N.M. 403, 156 P.3d 694 (internal quotation marks and citation omitted).

{36}    In *Gutierrez*, we held that statements given to a police officer by a stabbing victim were not testimonial where the statements were given to the officer while the officer was responding to a fight in progress and still trying to figure out if there were other suspects or victims at the scene, rather than in response to a structured question-and-answer interrogation. 2011-NMCA-088, ¶¶ 15-16. In contrast, in *Romero*, our Supreme Court held that a tape recorded statement given by a victim to police at a police station interrogation was testimonial since it was given in response to structured

25

questioning as part of an aggravated battery against a household member investigation. 2007-NMSC-013, ¶¶ 19-23.

{37} The district court determined that the primary purpose of Officer Thompson's on-the-scene questioning of Victim concerning who had hit her and the location of that individual was to assist the police officers in meeting the ongoing emergency involving a potentially armed and dangerous person, Defendant, who was still at large. Prior to arriving for the second time at Victim's residence, Officer Thompson had been informed by dispatch that two individuals were outside the residence swinging knives at each other. Upon arriving at Victim's residence, Officer Thompson testified that he had a public safety concern that a dangerous individual may still be in the area and a threat to the community surrounding Victim's residence, which was home to multiple families and to children who frequently played outside. As a result of this concern for public safety, Officer Thompson asked Victim questions in order to determine who had hit her and where that person was now. Victim answered by identifying Defendant as the individual who had hit her and stated that she thought he may still be inside her trailer.

{38} The circumstances here make this case more like *Gutierrez* than *Romero*. In *Gutierrez*, the challenged out-of-court statements were made while the police were responding to a potential fight in progress and still trying to figure out who the

suspects and victims were. Additionally, unlike the facts of *Romero*, where the battery victim's statement was taken and recorded in response to structured questioning at a police station and as part of an aggravated battery investigation, here there is no indication that Officer Thompson's questions were part of a formal police station-style interrogation structured to gather facts relevant to a future criminal prosecution. Accordingly, we conclude that Victim's statements were not testimonial and their admission did not constitute a violation of the Confrontation Clause.

**{39}** We also conclude that Defendant waived his right to object to Officer Thompson's testimony connecting Defendant to the knives found by police on the kitchen table in Victim's trailer. During cross-examination, defense counsel asked Officer Thompson questions concerning where the knives found on the kitchen table in Victim's trailer had come from and whether those knives were actually the knives used by Victim and Defendant during their confrontation. Officer Thompson testified that Victim had stated that she and Defendant had two knives and those were the knives found on the kitchen table in her trailer. However, because no objection, motion to strike, or curative instruction for this testimony was requested by defense counsel, we decline to address Defendant's contention on appeal. *See Trujillo*, 2002-NMSC-005, ¶¶ 12-13 (holding that where testimony was not objected to at trial that

the issue of whether admission of the testimony violated the Confrontation Clause was waived on appeal).

**IV.    Admission of Officer Esquero's Account of Defendant's Arrest Did Not Constitute Plain Error**

{40}    On direct examination, the State asked Officer Esquero whether he was involved with Defendant's arrest in March 2013. Officer Esquero testified that he and other officers responded to a late night disturbance at a trailer park sometime between 10:00 p.m. and 2:00 a.m., and upon arriving made contact with Victim, who along with others, stated that a disturbance had occurred and that Defendant had fled the scene. Officer Esquero and other officers searched the trailer park for Defendant and ultimately found him hiding underneath a nearby culvert. Officer Esquero testified that Defendant was then arrested and appeared intoxicated, belligerent, and was verbally combative. There was no objection to this testimony.

{41}    Defendant argues on appeal that "[t]he trial court committed plain error in permitting the State to admit uncharged misconduct evidence in violation of Rule 11-404(B)(2)[] NMRA." Rule 11-404(B)(1)-(2) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[,]" provided however that such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence

28

of mistake, or lack of accident." The alleged error, Defendant argues, stemmed from Officer Esquero's testimony in response to the State's question concerning the circumstances surrounding the arrest of Defendant in March 2013, which occurred some months after the conduct for which Defendant was on trial. This testimony, Defendant contends, "was irrelevant to the issues at trial except insofar as it constituted evidence of his propensity to become drunk and violent[,]" and constituted plain error since it was admitted without notice and without a Rule 11-403 NMRA balancing of the prejudicial effect of the evidence against its probative value.

{42}    "This Court reviews unpreserved evidentiary matters for plain error." *State v. Lopez*, No. A-1-CA-34615, 2017 WL 3225444, ___-NMCA-___, ¶ 34, ___ P.3d ___, (July 28, 2017); *see* Rule 11-103(E) NMRA ("A court may take notice of plain error affecting a substantial right, even if the claim of error was not properly preserved."). However, we only will apply plain error if "allegedly erroneous testimony affected the substantial rights of the accused and constituted an injustice that created grave doubts concerning the validity of the verdict." *State v. Sweat*, 2017-NMCA-069, ¶ 20, 404 P.3d 20 (internal quotation marks and citation omitted).

{43}    The admission of Officer Esquero's unobjected-to testimony concerning the circumstances surrounding the arrest of Defendant did not affect the substantial rights of Defendant or create grave doubts as to the validity of the verdict. Officer Esquero,

29

as the State points out in its brief, "never identified the nature of the disturbance to which he responded, and never said that Defendant caused the disturbance." Moreover, the State contends that Officer Esquero's testimony was relevant since Defendant had fled from the scene and "[i]t is well established that evidence of flight 'may prove consciousness of guilt.' " We agree. We also observe that ample evidence was admitted at Defendant's trial apart from Officer Esquero's testimony concerning his role in the arrest of Defendant to support Defendant's convictions for aggravated assault against a household member, false imprisonment, and battery against a household member. Accordingly, we conclude that it was not plain error to admit Officer Esquero's testimony describing the arrest of Defendant.

**V.      Sufficient Evidence Supports Defendant's Convictions**

{44}      Finally, Defendant challenges the sufficiency of the evidence to support his convictions. Defendant contends that Mr. Ochoa and Ms. Polizzi were untruthful in their testimony "about what happened and could not have seen what happened from across the street and within the rock wall enclosing their trailer. [Defendant] also believes Mr. Ochoa was not truthful about the knives given where they were found by the police, and that the police should have collected and tested the knives."

{45}      "Sufficient evidence exists to support a conviction when substantial evidence[,]" either direct or circumstantial, "exists to support a verdict of guilt beyond

30

a reasonable doubt with respect to every element essential to a conviction." *State v. Vargas*, 2016-NMCA-038, ¶ 27, 368 P.3d 1232 (internal quotation marks and citation omitted). New Mexico appellate courts review challenges to the sufficiency of the evidence to support a conviction "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "It is the exclusive province of the jury to resolve inconsistencies or ambiguities in a witness's testimony, and New Mexico appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting [their] judgment for that of the jury." *Vargas*, 2016-NMCA-038, ¶ 27 (internal quotation marks and citation omitted). Rather, the appellate courts will only determine whether "a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction." *Id.* (emphasis, internal quotation marks, and citation omitted).

{46}    The testimony of Mr. Ochoa and Ms. Polizzi, the police officers, and the evidence admitted at trial constituted sufficient evidence to support Defendant's convictions. Defendant's contentions that Mr. Ochoa and Ms. Polizzi were untruthful in their testimony concerning what they were able to see of the altercations between Victim and Defendant from their trailer and the origin of the knives found in Victim's

trailer require this Court to reweigh the credibility of the testimony presented at trial. Based on the principles described above, this Court will not take the place of the jury and make a credibility determination. Accordingly, because Defendant does not otherwise challenge the sufficiency of the evidence presented to establish the essential elements of the charged crimes, we conclude that a rational jury could have found beyond a reasonable doubt the facts required to sustain Defendant's convictions.

**CONCLUSION**

{47}     For the foregoing reasons, the judgment and sentence is affirmed.

{48}     **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**



_____
**EMIL J. KIEHNE, Judge**



_____
**TIMOTHY L. GARCIA, Judge Pro Tempore**